# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

KATIE MERRITT,

Plaintiff,

v.

3:25-CV-695<br>(LEK/MJK)

TIOGA COUNTY DEPARTMENT OF SOCIAL
SERVICES, et al.,

Defendants.

---

KATIE MERRITT, Plaintiff, *pro se*

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE LAWRENCE E. KAHN, Senior U.S. District Judge

## ORDER and REPORT-RECOMMENDATION

On June 2, 2025, Plaintiff filed a document styled as "Updated Petition For Writ Of Habeas Corpus Under 42 U.S.C. § 2241" ("Petition") (Dkt. 1) which, after closer examination, because it has been filed in federal court will be considered as an action arising under 42U.S.C. § 1983 since Plaintiff seeks relief for alleged violations of her constitutional rights.[1] Plaintiff also moved to proceed *in forma pauperis* ("IFP"), and for service by the United States Marshal. (Dkts. 3, 4). For purposes of this Order and Report-Recommendation, the Court is going to refer to the Petition as a Complaint ("Complaint or "Compl.") and to Petitioner and Respondents as Plaintiff and Defendants, respectively. Plaintiff also affixed a declaration ("Declaration") to the

---

[1] In certain circumstances, habeas relief may be obtained upon a petition filed in New York's Family Court, under New York's Family Court Act, Social Services Law or Domestic Relations Law.

Complaint which the Court will incorporate by reference. *See Decastro v. Randstad Prof'ls US, LLC,* No. 15-CV-0944, 2019 WL 131856, fn. 1 (S.D.N.Y. Jan. 8, 2019). Finally, Plaintiff filed a document styled as "Motion In Support Of Petition For Writ of Habeas Corpus" ("Motion") which is virtually identical to the allegations contained in her Declaration and in the Complaint. The Court notes that the Motion is not attested to under the penalties of perjury or otherwise acknowledged by a duly licensed notary public. (Dkt. 2). The Clerk has sent the Complaint, Declaration, Motion, IFP application, and motion for service by the United States Marshal to the Court for review.[2]

## I.   **IFP Application**

Plaintiff declares in her IFP application that she is unable to pay the filing fee. (Dkt. 3). After reviewing Plaintiff's application, this Court finds that she is financially eligible for IFP status.

In addition to determining whether a plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

---

[2] Page 6 of the Complaint is titled "Exhibit List – Habeas Corpus Petition" and references Exhibits "A" through "K". None of the referenced exhibits have been submitted to the Court.

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

3

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of the plaintiffs' complaint under the above standards.

## II.    <u>Complaint</u>

Plaintiff's allegations arise from the October 1, 2024 removal of her new-born child from her custody by Defendant Tioga County Department of Social Services ("DSS") "based on hearsay from medical staff previously reported for misconduct and sexual assault." (Compl, at 2).[3] Plaintiff alleges the "order" removing her new-born child was signed by the Deputy Commissioner and "retroactively stamped by a judge on October 4, 2024." (*Id.*). At an October 2, 2024 hearing, Plaintiff alleges that she was denied the right to "object or submit evidence." (*Id.*). Plaintiff alleges that Defendant Judge Schumacher was biased and denied her motions to recuse himself and transfer the

---

[3] All page references are to the CM/ECF pagination system.

4

case "despite evidence of jurisdictional and constitutional violations." (Plaintiff's Declaration, Dkt. 1, ¶ 5). According to the Complaint, Defendant DSS utilized Plaintiff's Tioga County address rather than her actual Broome County address where she resided and was enrolled in the "PA Address Confidentiality Program (ACP) due to domestic violence." (*Id.*).

The Complaint purports to allege nine separate claims, all of which lack any substantive allegations. (*Id.*). Plaintiff seeks various forms of relief, including but not limited to, declaratory and injunctive relief. (*Id.*).

## III.    Subject Matter Jurisdiction

### A.    Legal Standards

#### 1.    *Younger* Abstention

Under the *Younger* abstention doctrine, initially articulated in *Younger v. Harris*, 401 U.S. 37 (1971), federal courts are forbidden from enjoining ongoing state proceedings. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004); *see also Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The Supreme Court has clarified the three circumstances in which courts should abstain under *Younger*: (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-7 (2013); *see also Schorr v. DoPico*, 686 F. App'x 34, 36 (2d Cir. 2017) (summary

5

order). A "state-initiated proceeding to gain custody of children allegedly abused by their parents" falls within the second category. *Sprint*, 571 U.S. at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419-420 (1979)).

The Court considers three additional factors before applying *Younger* abstention: whether "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo*, 351 F.3d at 75; *see also Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F. 3d 425, 427 (2d Cir. 2015); *Lowell v. Vermont Dep't of Child. & Fams.*, 835 F. App'x 637, 639 (2d Cir. 2020), as amended (Dec. 15, 2020) (summary order) ("after applying the categorical *Sprint* approach, this court will consider three additional, non-dispositive factors to determine whether abstention is appropriate").

### 2. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine bars 'federal courts from exercising jurisdiction over claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Walker v. Fam. Ct. Judge Catherine Cholakis,* No. 1:19-CV-1288(LEK/CFH), 2020 WL 3503158, at \*3 (N.D.N.Y. June 29, 2020) (quoting *Sykes v. Mel S. Harris and Assoc. LLC*, 780 F.3d 70, 94 (2d Cir. 2015)). "[T]he *Rooker-Feldman* doctrine has four requirements: (1) the

6

plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment." *Id*. (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)).

The Second Circuit recently addressed the "'narrow ground occupied by *Rooker-Feldman*,'" and emphasized the doctrine's application to "'limited circumstances.'" *Hunter v. McMahon,* 75 F. 4th 62, 67 (2d Cir. 2023) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Specifically, the Court reiterated that *Rooker-Feldman* applies "only after state-court proceedings have 'ended[,]'" and that the doctrine "'does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.'" *Id.* (quoting *Exxon Mobil*, 544 U.S. at 284 & 291); *see also Lance v. Dennis,* 546 U.S. 459, 466, (2006) ("*Rooker-Feldman* is not simply preclusion by another name" but "applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court.") (internal quotation marks and citation omitted). Despite the Supreme Court's "efforts to return *Rooker-Feldman* to its modest roots," "'lawyers continue to invoke the rule and judges continue to dismiss federal actions under it'

beyond the modest circumstances in which it applies." *Id.* (quoting *Vanderkodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 405 (6th Cir. 2020)).

### 3.    Domestic Relations Abstention

Domestic relations is "an area of law that federal courts and Congress leave almost exclusively to state law and state courts." *Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (while rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, "in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts" (internal citation omitted)); *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) ("federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field"). Federal District Courts' consistent refusal to intervene in child custody cases "is supported by the Supreme Court's longstanding recognition — in a non-diversity case involving a child custody dispute — that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.'" *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)). "Accordingly, to the extent that [a] Plaintiff challenges the child custody results of the Family Court proceedings, this Court is without jurisdiction to review such matters." *Washington v. Williams*, No. 19-CV-

00289, 2019 WL 1876787, at *2 (E.D.N.Y. Apr. 26, 2019) (the Court lacks subject matter jurisdiction over plaintiff's claims that the state court judge violated her rights during custody and neglect proceedings).

### B.    Analysis

It is clear from the Complaint and the Declaration (incorporated by reference) that the issue of Plaintiff's custody over S.H. was brought and adjudicated before Defendant Judge Schumacher. The crux of Plaintiff's Complaint appears to be that her child was removed from her custody "based on hearsay from medical staff previously reported for misconduct and sexual assault" and with "no credible medical evidence or imminent risk." (*Id.* at 2). To the extent Plaintiff's Complaint contains allegations aimed at changing or challenging the results of an ongoing domestic proceeding or final custody decree, these claims are subject to dismissal for lack of subject matter jurisdiction based on the doctrines referenced above. Federal Courts must "abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings," *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002), and "only the U.S. Supreme Court—and not lower federal courts— may review and reject state-court decisions under 28 U.S.C. § 1257." *Green v. Mattingly*, 585 F.3d 97, 102-03 (2d Cir. 2009) (internal quotations omitted). In challenging the results of any custody proceedings concerning S.H, Plaintiff is necessarily asking this Court to intercede in "a matter rightfully reserved for state

courts," *McKnight v. Middleton*, 699 F. Supp. 2d 507, 520 (E.D.N.Y. Mar. 29, 2010),

when there is nothing apparent which would preclude Plaintiff from appealing the

decision(s) she challenges in state court. Accordingly, the Court recommends

dismissing the Complaint in its entirety without prejudice, but without leave to amend

in this Court.

IV.    **Federal Rules of Civil Procedure 8**

Pleadings must contain, among other things, "a short and plain statement of the

claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2). "The

purpose of" Rule 8 "is to give fair notice of the claim being asserted so" adverse parties

have "the opportunity to file a responsive answer, prepare an adequate defense, and

determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189

F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires the pleading to

include "a short and plain statement of the grounds for the court's jurisdiction" and "a

demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical

form is required,' the Federal Rules make clear that each allegation contained in the

pleading 'must be simple, concise, and direct.'" *Cole v. Smrtic*, No. 1:24-CV-847, 2024

WL 4870495 (MAD/CFH), at *2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)).

Allegations "so vague as to fail to give the defendants adequate notice of the claims

against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir.

2009) (summary order).

10

Here, the Complaint, as pleaded, plainly violates Fed. R. Civ. P. 8. The Complaint lists nine separate "Claims For Relief," none of which provide any details, factual or otherwise, as to the nature of the claims. Plaintiff's claims do not provide any of the Defendants with notice of the allegations against them or a basis on which liability should be imposed. ( Dkt. 1). The Complaint is one step removed from the "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. And that is simply not enough to state a claim. *See, Lesson v. Jane Doe*, No. 1:25-CV-00188 (AMN/TWD), 2025 WL 1291533 (N.D.N.Y. May 5, 2025) (Adopting Report and Recommendation which dismissed a plaintiff's excessive force claim because that plaintiff failed to "identify what force" was used against him or "how it was excessive."). Therefore, even if the Court had subject matter jurisdiction over Plaintiff's claims, the Complaint should nevertheless be dismissed without prejudice and with leave to amend.

## V.    <u>Personal Involvement – Deputy Commissioner of DSS</u>

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). "The supervisor must have committed the violation [themselves], not by the supervision of others who committed the violation." *Iqbal*, 556 U.S. at 676. In other words, the

11

violation must be established against the supervisory official directly. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id*.

Here, the Complaint fails to identify who the "Deputy Commissioner" of Defendant DSS is. *See Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *4 (S.D.N.Y. Mar. 7, 2019) (personal involvement not established where plaintiff "fail[ed] to name or identify" defendant in body of Amended Complaint "or otherwise connect him to the allegations raised therein," even though defendant's "name and title . . . appear in the caption of the Amended Complaint"). Therefore, even if Plaintiff's claims are not barred for lack of subject matter jurisdiction, the Court nevertheless recommends dismissing the Complaint against the Deputy Commissioner of Tioga DSS without prejudice and with leave to amend.

## VI.    Tioga County Department of Social Services

The Court notes that the Tioga County Department of Social Services is a subdivision of the municipality and does not have any separate legal existence or the capacity to be sued. "[M]unicipal departments like the Department of Social Services are not amenable to suit, … and no claims lie directly against the Department." *Hoisington v. County of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) (internal citations omitted). Plaintiff's claims, to the extent they are not barred for lack of subject matter jurisdiction, are more appropriately brought against Tioga County which is not a

party to this action. Accordingly, even if subject matter jurisdiction was not lacking, the Court nevertheless recommends dismissing Plaintiff's claims against the Tioga County Department of Social Services with prejudice and without leave to amend.

## VII.  **Children's Home (Broome County Foster Care)**

The Complaint fails to set forth any substantive allegations against Defendant "Children's Home (Broome County Foster Care)." "[W]here a plaintiff names a defendant in the caption, but the complaint contains no substantive allegations against the defendant, dismissal of the complaint as to that defendant is appropriate." *Hobbs v. Dep't of Transp. N.Y.C.*, No. 20-CV-512, 2020 WL 1140794, at *3 (S.D.N.Y. Mar. 6, 2020) (citations omitted). Further, to the extent Defendant Children's Home (Broome County Foster Care) is a subdivision of Broome County, it does not have a separate legal existence or the capacity to be sued.  Therefore, even if Plaintiff's claims are not barred for lack of subject matter jurisdiction, the Court nevertheless recommends dismissing the Complaint as to this Defendant with prejudice and without leave to amend.

## VIII.  **Municipal Liability**

### A.    **Legal Standards**

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A

municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, (2010)), *report recommendation adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of their constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

"The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's 'authorized decisionmakers' or 'those who establish governmental policy;' (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees[.]" *Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019) (cleaned up). "Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of their constitutional rights. *Id.* (citing *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)); *see also Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged").

14

**B.    Analysis**

Plaintiff has named Tioga County Department of Social Services and Children's Home (Broome County Foster Care) as Defendants in this action, which the Court will construe liberally to constitute a claim against Tioga County and/or Broome County. However, Plaintiff has not alleged any formal policy, widespread practice, or failure to provide adequate training that would satisfy the pleading requirement articulated above. Instead, as noted above, Plaintiff's claims are in list form and do not contain any allegations whatsoever. Accordingly, Plaintiff has failed to state a viable *Monell* claim against Tioga County and/or Broome County. Accordingly, to the extent the Complaint asserts a claim(s) against Tioga County and/or Broome County, it is dismissed without prejudice and with leave to amend.

**IX.    <u>Judge Adam Schumacher</u>**

Judge Adam Schumacher is immune from suit. "[T]he New York State Unified Court System is unquestionably an arm of the State and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity. *See Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (dismissing claim against a Delaware County judge on sovereign immunity grounds). Here, Plaintiff presumably brings an action against Judge Schumacher in what the Court believes is his official

15

capacity given Plaintiff's allegations that he "denied [Plaintiff's] motions to recuse

him[self] and refused to transfer the case despite evidence of jurisdictional and

constitutional violations." (Plaintiff's Declaration, Dkt. 1, at ¶ 5). Therefore, even if it

the District Court determines that Plaintiff has established subject matter jurisdiction,

the Court recommends that Plaintiff's claim(s) against Judge Schumacher be dismissed

with prejudice and without leave to amend because he enjoys Eleventh Amendment

Immunity. *Id.*

To the extent the Complaint alleges any claim(s) against Judge Schumacher in his

personal capacity, it too is subject to dismissal on judicial immunity grounds. *See*

*McNair v. Utica Police Dep't,* 6:23-CV-699 (DNH/ATB), 2023 WL 4935993, at *3

(N.D.N.Y. June 26, 2023), *report and recommendation adopted*, No. 6:23-CV-699,

2023 WL 4931609 (N.D.N.Y. Aug. 1, 2023). Judges have absolute immunity for their

judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11

(1991); *see also Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally,

'acts arising out of, or related to, individual cases before the judge are considered

judicial in nature'") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)).

"Judicial immunity applies even when the judge is accused of acting maliciously or

corruptly." *Coon v. Merola*, No. 1:19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3

(N.D.N.Y. Apr. 8, 2019) (citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, (1976))),

*report and recommendation adopted*, 2019 WL 1978595 (N.D.N.Y. May 3, 2019).

"The only two circumstances in which judicial immunity does not apply is when [the judge] takes action 'outside' [their] judicial capacity [or] when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" *Id*. (quoting *Mireles*, 502 U.S. at 11-12). Here, Plaintiff fails to plausibly allege that Judge Schumacher was acting outside of his judicial capacity or in the absence of jurisdiction. The Complaint should therefore be dismissed against Judge Schumacher in his individual capacity with prejudice and without leave to amend.

## X.    **Opportunity to Amend**

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to re plead at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987

17

F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997).

Accordingly, the Court recommends that:

(a) The Complaint be dismissed in its entirety with prejudice and without leave to amend in this Court for lack of subject matter jurisdiction;

(b) Even if the Court has subject matter jurisdiction over Plaintiff's claims, the Complaint should nevertheless be dismissed without prejudice and with leave to amend for failure to comply with Fed. R. Civ. P. 8;

(c) Even if the Court has subject matter jurisdiction over Plaintiff's claims, the Complaint should be dismissed as to the Tioga County Department of Social Services with prejudice and without leave to amend;

(d) Even if Plaintiff's claims are not barred for lack of subject matter jurisdiction, the Complaint should be dismissed as to the Deputy Commissioner of Tioga DSS without prejudice and with leave to amend;

(e) Even if Plaintiff's claims are not barred for lack of subject matter jurisdiction, the Complaint against the Children's Home (Broome County Foster Care) should be dismissed with prejudice and without leave to amend;

(f) Even if Plaintiff's claims are not barred for lack of subject matter jurisdiction and to the extent the Complaint asserts a claim(s) against Tioga County, the Complaint against Tioga County and/or Broome County should be dismissed without prejudice and with leave to amend; and

(g) Even if Plaintiff's claims are not barred for lack of subject matter jurisdiction, the Court nevertheless recommends dismissing the Complaint against Judge Adan Schumacher with prejudice and without leave to amend.

PLAINTIFF IS ADVISED THAT SHE SHOULD NOT SEEK TO FILE AN AMENDED COMPLAINT UNTIL DISTRICT JUDGE KAHN RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFF'S ORIGINAL CLAIMS. ANY AMENDED COMPLAINT FILED BEFORE JUDGE KAHN'S DECISION WITH RESPECT TO THIS COURT'S RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT BE CONSIDERED BY THE COURT. As noted below, however, Plaintiffs may file objections to this Court's recommendations.

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that Plaintiffs' IFP Application (Dkt. 3) is **GRANTED**;[4] and it is further

**ORDERED**, that Plaintiff's motion requesting service by the United States Marshal is **DENIED**; and it is further

**RECOMMENDED,** that the Complaint in its entirety be **DISMISSED WITH PREJUDICE** and without leave to amend in this Court for lack of subject matter jurisdiction; and it is further

**RECOMMENDED**, that even if the Court has subject matter jurisdiction over Plaintiff's claims, the Complaint should nevertheless be **DISMISSED WITHOUT**

---

[4] Although their IFP Application has been granted, plaintiffs will still be required to pay fees that they may incur in this action, including copying and/or witness fees.

**PREJUDICE** and with leave to amend for failure to comply with Fed. R. Civ. P. 8; and it is further

**RECOMMENDED**, that even if the Court has subject matter jurisdiction over Plaintiff's claims, the Complaint should nevertheless be **DISMISSED WITH PREJUDICE** and without leave to amend as to the Tioga County Department of Social Services; and it is further

**RECOMMENDED**, that even if Plaintiff's claims are not barred for lack of subject matter jurisdiction, the Complaint against the Deputy Commissioner of Tioga DSS should nevertheless be **DISMISSED WITHOUT PREJUDICE** and with leave to amend; and it is further

**RECOMMENDED**, that even if Plaintiff's claims are not barred for lack of subject matter jurisdiction, the Complaint against the Children's Home (Broome County Foster Care) should nevertheless be **DISMISSED WITH PREJUDICE** and without leave to amend; and it is further

**RECOMMENDED**, that even if Plaintiff's claims are not barred for lack of subject matter jurisdiction and to the extent the Complaint asserts a claim(s) against Tioga County and/or Broome County, the Complaint against Tioga County and/or Broome County should be **DISMISSED WITHOUT PREJUDICE** and with leave to amend; and it is further

**RECOMMENDED**, that even if Plaintiff's claims are not barred for lack of subject matter jurisdiction, the Court nevertheless recommends that the Complaint against Judge Adan Schumacher should be **DISMISSED WITH PREJUDICE** and without leave to amend; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on the *pro se* Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: July 1, 2025.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

Decastro v. Randstad Professionals US, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 131856, 2019 A.D. Cases 6164

2019 WL 131856
United States District Court, S.D. New York.

Gregory DECASTRO, Plaintiff,

v.

RANDSTAD PROFESSIONALS US, LLC, Defendant.

No. 15-CV-0944(RA)
|
Signed 01/08/2019

**Attorneys and Law Firms**

Gregory DeCastro, Bronx, NY, pro se.

Howard Mark Wexler, Seyfarth Shaw LLP, New York, NY, Gregory L. Smith, Jr., Seyfarth Shaw LLP, Atlanta, GA, for Defendant.

MEMORANDUM OPINION & ORDER

RONNIE ABRAMS, United States District Judge

 **\*1**  Plaintiff Gregory Decastro, proceeding *pro se*, brings this action against Defendant Randstad Professionals US, LLC, an employment agency, asserting that Defendant discriminated against him by refusing to find work for him on the basis of his physical disabilities. After initially serving a now defunct corporate defendant, the Norrell Corporation, Plaintiff sought leave to amend his complaint, which this Court granted. Defendant now moves to dismiss Plaintiff's amended complaint for failure to state a claim, failure to exhaust, and untimeliness. For the reasons that follow, the case is dismissed with prejudice.

**BACKGROUND**

The following facts are drawn from Plaintiff's amended complaint, original complaint, and two declarations filed in support of his motions for leave to amend his original complaint. [1] *See* Orig. Compl.; June 2, 2017 Decastro Decl. ("First Decastro Decl."); February 6, 2018 Decastro Decl. ("Second Decastro Decl."); Am. Compl.

[1]  Given Plaintiff's *pro se* status, this Court will consider his original complaint and declarations as incorporated by reference in his amended

complaint. *See Mingues v. Nelson*, No. 96-CV-5396 (GBD), 2004 WL 324898, at *2 (S.D.N.Y. Feb. 20, 2004); *Hughes v. Salerno*, No. 11-CV-9094 (NRB), 2012 WL 6097775, at *2 (S.D.N.Y. Dec. 5, 2012).

Mr. Decastro is a disabled New York resident currently collecting social security disability benefits on the basis of injuries from two car accidents which resulted in "permanent damage to [his] legs, knees, back[,] [and] neck." Am. Compl. at 5. This limits his ability to "walk, stand[,] and lift." Second Decastro Decl. at 4. In or around 1990, Plaintiff alleges, he sought assistance from Norrell, an employment agency which found temporary work for him as a paralegal. First Decastro Decl. at 15.

After Plaintiff's paralegal position ended, he asserts that he sought further employment from Norrell, but that Norrell continually failed to find jobs for him. Second Decastro Decl. at 5. In response to Plaintiff's requests, Norrell allegedly informed Plaintiff that "there was no suitable work available." First Decastro Decl. at 15. According to Plaintiff, this justification was a "pretext," and, in truth, Norrell refused to consider him for employment placements based on his physical disabilities. *Id.* at 15–16; *see id.* (alleging that Norrell "had available placements for which [Plaintiff] was qualified" but "[did] not want to be bothered with [Plaintiff]" and "did not want to give Plaintiff an adequate answer ... regarding why he was not considered for employment"). Plaintiff also asserts that "[Norrell] knew [he] was disabled because in 2015 [Norrell] was contacted by the EEOC after Plaintiff filed a complaint." *Id.* at 16.

On September 28, 2006, Norrell was dissolved as a corporation by the Georgia Secretary of State. *See id.* at 18. After its dissolution, Norrell listed Spherion Corporation as the forwarding address for "[a]ny process served on [Norrell]." *Id.* at 19. Plaintiff asserts that Spherion, which, according to him, later became Defendant Randstad Professionals US, LLC, is liable for the same acts which Plaintiff initially alleged against Norrell. [2] Am. Compl. at 1; Pl.'s Notice of Mot. for Summ. Judgment at 9-10.

[2]  When this Court granted leave to amend and permitted Plaintiff to effectuate service on the appropriate defendant, *see* May 24, 2018 Order of Service, Plaintiff named "Randstad Professionals (formerly Norrell Corporation)" as the recipient of service, and process was effectuated on Defendant,

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 23 of 129

Decastro v. Randstad Professionals US, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 131856, 2019 A.D. Cases 6164

*see* Process Receipt and Return Form, Dkt. No. 38. In his motion for summary judgment, construed by this Court as a reply to Defendant's motion to dismiss, *see, infra.*, n. 3, Plaintiff claims that "the entity which was previously known as [Norrell] has merged with another entity and [is] now known as '[Randstadt] Professionals.' " Pl.'s Notice of Mot. for Summ. Judgment, Dkt. 46, at 9–10. Defendant maintains that there is no "corporate relationship between Norrell and Randstad." Def's Mem. at 5.

## PROCEDURAL HISTORY

**\*2**  On December 20, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See* Am. Compl. at 6. Plaintiff's EEOC charge named Norrell, which at that time no longer existed, as the respondent. *See* Orig. Compl. at 3, 5. The EEOC dismissed the charge on January 22, 2015 and provided Plaintiff with a Notice of Right to Sue. *See* Am. Compl. at 9. Plaintiff then filed this lawsuit against Norrell on February 6, 2015, seeking employment, disability accommodation, and an unspecified amount of money damages under the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101 *et seq.* ("Title I"). *See* Orig. Compl at 1-4.

Norrell failed to respond to the complaint, and Plaintiff moved for default on September 16, 2016. *See* Mot. for Default Judgment. This Court refused to grant a default judgment, but permitted Plaintiff to move to amend his complaint against a proper defendant. *See* April 6, 2017 Order.

Plaintiff then sought leave to amend his complaint to name "SPN Group" as the defendant in this action, alleging that this was the new corporate name of Spherion Corporation, which, according to him, was formerly Norrell. *See* First Decastro Decl. at 7. This Court denied Plaintiff's first motion to amend his complaint without prejudice, finding that he had "failed to allege that Norrell gave preferential treatment to non-disabled applicants or that Norrell's employees made any comments or took any actions that could give rise to an inference of discriminatory animus." January 9, 2018 Opinion & Order ("Opinion & Order") at 6. In other words, this Court held that whether or not Norrell or SPN Group was the proper defendant, the proposed amendment would be futile against either defendant because Plaintiff had failed to plausibly allege "that Norrell discriminated against him on the basis of his disability." *Id.* at 4, 6. In light of Plaintiff's *pro se* status, the Court dismissed Plaintiff's motion for leave to amend without

prejudice. *Id.* at 6. The Court instructed Decastro that, if he proceeded to file a renewed motion for leave to amend, he must attach to his motion "a proposed amended complaint that alleges facts sufficient to establish all the elements of his ADA and/or race-discrimination claims." *Id.*

On February 6, 2018, Plaintiff filed a second declaration in support of a new motion to amend, although he did not include an amended complaint with this motion. *See* Second Decastro Decl. Given Decastro's *pro se* status, the Court allowed him, by May 28, 2018, to "amend his complaint and serve the new amended complaint on the proper Defendant." April 24, 2018 Order at 1. The Court instructed Decastro that this amended complaint must "include[ ] all factual allegations and claims that he has a good-faith basis for bringing against Defendant." *Id.* at 1-2.

Plaintiff filed an amended complaint on May 23, 2018. *See* Am. Compl. This complaint differs from Plaintiff's original complaint in three substantive ways. First, Plaintiff now names Defendant Randstad Professionals US, LLC as the sole defendant in this case, which he claims was formerly SPN Group. *See id.* at 1; Pl.'s Notice of Mot. for Summ. Judgment at 9-10. Second, Plaintiff includes a one-page "Addendum to Complaint" explaining his continuing efforts to find work. *See id.* at 8. Finally, Plaintiff asks for ten million dollars in damages. *See* Second Decastro Decl. at 4.

On August 22, 2018, Defendant moved to dismiss the amended complaint for failure to state a claim, failure to exhaust, and untimeliness. Plaintiff responded on September 4, 2018, and Defendant replied on September 18, 2018. [3]

[3]     Although Plaintiff's response is labeled a "motion for summary judgment" and briefly asserts that Defendant raises no genuine issue of material fact, *see* Pl.'s Notice of Mot. for Summ. Judgment at 14–15, his motion focuses primarily on Defendant's motion to dismiss and repeatedly cites to law governing motions to dismiss, *see id.* at 8-9. The parties, moreover, have not engaged in any discovery, nor has Plaintiff submitted affidavits or other evidence in support of a motion for summary judgment. *See* Local Civil Rule 56.1 ("Upon any motion for summary judgment ... there shall be annexed to the notice of motion a separate, short and concise statement ... of material facts as to which the moving party contends there is no genuine issue to be tried."). This Court

Decastro v. Randstad Professionals US, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 131856, 2019 A.D. Cases 6164

therefore treats Plaintiff's motion as an opposition to Defendant's motion to dismiss.

## STANDARD OF REVIEW

**\*3** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In so doing, this Court must "assume all factual allegations contained in the complaint are true, and draw all inferences in the light most favorable to the non-moving party." *Ambrose v. Dell*, No. 12-CV-6721 (JPO), 2016 WL 894456, at \*2 (S.D.N.Y. Mar. 8, 2016) (quoting *Twombly*, 550 U.S. at 572) (quotation marks, citations, and alterations omitted). Nonetheless, the court need not credit "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"In the case of a *pro se* litigant, the court reads the pleadings leniently and construes them to raise 'the strongest arguments that they suggest.' " *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) ). "Nevertheless, dismissal of a *pro se* complaint is appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-0675 (RJS), 2014 WL 6982929, at \*5 (S.D.N.Y. Dec. 10, 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) ).

## DISCUSSION

### I. Plaintiff's ADA Claim

Plaintiff alleges that Defendant refused to place or consider placing him with an employer because of his physical disability, thereby violating Title I of the ADA, 42 U.S.C. § 12101, *et seq.*

Title I of the ADA prohibits discrimination in hiring decisions against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). In order to survive a motion to dismiss under this statute, a plaintiff must plausibly allege that "(1) the

employer is subject to the ADA;[4] (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). With respect to the final element, "a plaintiff must show that the adverse employment action 'took place under circumstances giving rise to an inference of discrimination.' " *Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ). To do so, a plaintiff bears the burden to "plead a plausible nexus between his disability and [the defendant's] failure to hire him." *Idlisan v. New York City Health & Hosps. Corp.*, No. 12-CV-9163 (PAE), 2013 WL 6049076, at \*5 (S.D.N.Y. Nov. 15, 2013).

[4]    For liability under the ADA, "[t]he joint employer doctrine has been applied to temporary employment or staffing agencies and their client entities." *Haight v. NYU Langone Med. Ctr., Inc.*, No. 13 Civ. 4993 (LGS), 2014 WL 2933190, at \*11 (S.D.N.Y. June 27, 2014) (internal quotation marks omitted).

Here, Plaintiff has failed to plausibly allege that Norrell refused to place him with an employer because of his physical disabilities. In its January 9, 2018 Opinion and Order, this Court made clear that Plaintiff had failed to assert any factual basis supporting a "causal link between his disability and the reason for Defendant's purported refusal to place him." *See* Opinion & Order at 6. In his amended complaint, however, Plaintiff continues simply to state that "[he] was not considered for employment that [he] applied for" and "was not hired due to [his] disability," without providing any basis for such claims. Am. Compl. at 5.

**\*4** Even assuming, as Plaintiff contends, that Defendant was formerly Norrell and may be responsible for the discriminatory acts alleged against its predecessor, Plaintiff's conclusory allegations are inadequate to state a claim under Title I of the ADA. As before, Plaintiff has not alleged any "circumstances giving rise to an inference of discrimination." *Graham*, 230 F.3d at 39. He has not, for instance, attributed a single comment to Defendant that could be viewed as reflecting "discriminatory animus," nor has he claimed that Defendant gave "non-disabled applicants preferential treatment." *Idlisan*, 2013 WL 6049076, at \*5; *see also Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB) (HBP), 2014

Case 3:25-cv-00695-LEK-MJK   Document 6   Filed 07/01/25   Page 25 of 129

Decastro v. Randstad Professionals US, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 131856, 2019 A.D. Cases 6164

WL 1259616, at *7 (S.D.N.Y. Mar. 24, 2014) (dismissing the plaintiff's ADA claim as "plainly insufficient" where he had done nothing more than conclusorily assert that the "[d]efendants' various actions were taken on account of his disability"); *Jiggetts v. Local 32BJ, SEIU*, No. 10 Civ. 9082 (DAB)(JCF), 2011 WL 4056312, at *2 (S.D.N.Y. Aug. 10, 2011) (Report & Recommendation), *adopted by* No. 10 Civ. 9082 (DAB), 2011 WL 4072033 (S.D.N.Y. Sept. 13, 2011) (dismissing the plaintiff's ADA claim where he "fail[ed] to allege a connection between his claimed disabilities and any adverse employment action taken against him"). Absent any such allegation, "discrimination is no more than one conceivable explanation for [Defendant's] actions." *Graham v. Macy's Inc.*, No. 14-CV-3192 (PAE), 2015 WL 1413643 at *4 (S.D.N.Y. March 23, 2015). Because Plaintiff's bald allegations fail even to "nudg[e] [his] claim[ ] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the Court grants Defendant's motion to dismiss Plaintiff's disability discrimination under the ADA. [5]

[5] In light of this conclusion, the Court does not address Defendant's exhaustion and timeliness arguments.

## II. Leave to Amend

Generally, "where dismissal is based on a *pro se* plaintiff's failure to comply with pleading conventions, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Henriquez-Ford v. Council of Sch. Supervisors and Adm'r*, No. 14-CV-2496 (JPO), 2016 WL 93863, at *2 (S.D.N.Y. Jan. 7, 2016) (quotation marks omitted). Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and leave may be denied in instances of "repeated failure to cure deficiencies by amendments previously allowed," *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

In denying Plaintiff's initial motion for leave to amend his complaint, the Court made clear that he had failed to

"establish any causal link between his disability and the reason for Defendant's purported refusal to place him." Opinion & Order at 6. As a result, it instructed Plaintiff that he must allege sufficient facts to establish this element of his claim. *See id.* The Court subsequently granted Plaintiff's renewed motion to amend his complaint (although he had not submitted the proposed amendment), but again warned him that he must "include[ ] all factual allegations ... that he has a good-faith basis for bringing against Defendant." April 24, 2018 Order at 1-2. Nevertheless, as in his original complaint, Plaintiff has failed to adequately allege that Defendant did not place him with an employer *because* of his physical disabilities.

Because the same deficiencies in Decastro's original complaint remain in his amended complaint, even after he was advised that such deficiencies would prove fatal to his claim, it does not appear that further amendment would be productive. *See, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014) (denying leave to amend was proper where a plaintiff had already failed to cure pleading deficiencies and did not specify what new facts it had that would cure those deficiencies); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (dismissing claim with prejudice was proper in absence of any indication that a plaintiff could provide additional allegations leading to a different result). Accordingly, this case is dismissed with prejudice.

## CONCLUSION

**\*5** For the foregoing reasons, Defendant's motion to dismiss is granted with prejudice. The Clerk of the Court is respectfully requested to terminate the motions pending at Docket Numbers 44 & 46 and close this case.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2019 WL 131856, 2019 A.D. Cases 6164

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 19-250**<br>DECASTRO v. NORRELL CORPORATION | — | C.A.2 | Jan. 25, 2019 | Docket |

**History (3)**

**Direct History (2)**

1.  Decastro v. Randstad Professionals US, LLC 👓
    2019 WL 131856 , S.D.N.Y. , Jan. 08, 2019

*Appeal Dismissed by*

2.  Decastro v. Randstad Professionals
    2019 WL 7761347 , 2nd Cir.(N.Y.) , Aug. 06, 2019

**Related References (1)**

3.  Decastro v. Norrell Corporation
    2018 WL 340032 , S.D.N.Y. , Jan. 09, 2018

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]    On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

**\*1**  The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]    Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

**\*2**  Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 29 of 129

2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4]    Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g.,* *Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 3:25-cv-00695-LEK-MJK     Document 6     Filed 07/01/25     Page 30 of 129

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled. [5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

5    The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search. [6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report. [7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

6    The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

7    The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at *2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Houston v. Collerman, Not Reported in Fed. Supp. (2016)
Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 31 of 129
2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

#### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Failure To Intervene

**\*5** The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Case 3:25-cv-00695-LEK-MJK   Document 6   Filed 07/01/25   Page 33 of 129
Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes,* 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir. 1988).

*7 It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf,* 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.,* 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart,* No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]     The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8**  In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at \*\*4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**D. Fourteenth Amendment**

**1. Equal Protection/Discrimination**

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**2. Due Process**

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 35 of 129

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

[9]   The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. Where the plaintiff is confined for "an intermediate duration – between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133.[10]

[10]   The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short – less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 36 of 129

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

**\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

**\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 37 of 129

Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury

"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS

Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York*, 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/ or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 3:25-cv-00695-LEK-MJK   Document 6   Filed 07/01/25   Page 38 of 129

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]   If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13  ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   11

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:16-CV-01009**<br>Houston v. Collman et al | — | N.D.N.Y. | Aug. 15, 2016 | Docket |

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 42 of 129
Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)

2020 WL 3503158

2020 WL 3503158
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha C. WALKER, Plaintiff,
v.
FAMILY COURT JUDGE CATHERINE
CHOLAKIS, et al., Defendants.

1:19-CV-1288 (LEK/CFH)
|
Signed 06/29/2020

**Attorneys and Law Firms**

Alisha C. Walker, Melrose, NY, pro se.

Denise P. Buckley, New York State Attorney General -
Albany, Albany, NY, Mindy Ming-Huai Jeng, State of New
York Unified Court System Office of Court Administration,
New York, NY, for Defendant Family Court Judge Catherine
Cholakis.

James P. Lagios, Rivkin Radler LLP, Albany, NY, for
Defendant Joseph Drescher, Esq.

Matthew Foley, Esq., Troy, NY, pro se.

**MEMORANDUM-DECISION AND ORDER**

Lawrence E. Kahn, Senior U.S. District Judge

**I. INTRODUCTION**

 *1  This action concerns alleged violations of pro se
plaintiff Alisha C. Walker's First, Fifth, and Fourteenth
Amendment rights. Dkt. No. 1 ("Complaint"). Plaintiff asserts
claims under 42 U.S.C. §§ 1983 and 1985 against the
Honorable Catherine Cholakis, a judge of the Family Court
of New York, Rensselaer County ("Judge Cholakis"), and
attorneys Joseph Drescher ("Drescher") and Matthew Foley
("Foley") (collectively, "Defendants"). Compl. ¶1. Plaintiff
seeks damages of at least $1,000,000 against Defendants
individually and collectively. Id. ¶¶ 49–52.

Before the Court are three motions to dismiss made pursuant
to Federal Rules of Civil Procedure 12(b)(1) and (6): one filed
by Foley, Dkt. Nos. 10 ("Foley Motion to Dismiss"); 10-1
("Foley Memorandum"); 10-24 ("Foley Affidavit"); one filed
by Drescher, Dkt. Nos. 13 ("Drescher Motion to Dismiss");

13-1 ("Drescher Memorandum"); and one filed by Judge
Cholakis, Dkt. Nos. 15 ("Cholakis Motion to Dismiss");
15-1 ("Cholakis Memorandum") (collectively, "Motions to
Dismiss"). Plaintiff did not respond to any motion.

For the following reasons, the Court grants Defendants'
Motions to Dismiss.

**II. BACKGROUND**

The Court draws all facts, which are assumed to be true, from
the Complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202,
210 (2d Cir. 2012). Plaintiff's claims stem from a pending
custody action in Rensselaer County Family Court ("Family
Court"). Plaintiff commenced the action in Family Court
on November 15, 2018, against the father of her children,
Luke Walker ("Walker") (who is represented by Drescher
in the state court proceeding). Id. ¶ 4. Foley was appointed
as an attorney for A.W. and T.W. ("Plaintiff's children") by
Judge Kehn. Id. ¶ 5. The case was later transferred to Judge
Cholakis, who issued orders on May 31, 2019 and August
19, 2019, granting temporary custody of Plaintiff's children to
Walker. Id. ¶11. In response to this temporary custody ruling,
Plaintiff brought this action against Defendants on October
18, 2019. Id. ¶ 2.

**A. Plaintiff's Factual Allegations and Claims**

Plaintiff alleges that Drescher and Foley conspired with
Judge Cholakis to deprive her and her children of their civil
and constitutional rights. Compl. ¶¶ 46–47. Judge Cholakis
violated her children's due process rights. Id. ¶¶ 42, 45. Foley
discriminated against Plaintiff on the basis of her Buddhist
religion by informing the court the Plaintiff believed in karma
and thus would not provide medical attention to the children.
Id. ¶ 17.

Moreover, in the course of the proceeding, Foley and
Drescher made "false and misleading statements with no
evidentiary support" and "belittled [Plaintiff's] character."
Id. ¶¶ 30–31, 37. Drescher and Foley engaged in deceit,
"character assassination and perjury." Id. ¶ 27.

Judge Cholakis demonstrated a lack of judicial competence,
as she "made numerous improper pejorative and
discriminatory statements," did not read the psychological
reports verifying Plaintiff's parental fitness, "appeared not to
know the case details," "unduly and unfairly relied on the spin
and deceit and character assassination and perjury" made by

Case 3:25-cv-00695-LEK-MJK   Document 6   Filed 07/01/25   Page 43 of 129

Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)

2020 WL 3503158

Drescher and Foley, and exhibited "personal animus and bias" against Plaintiff. Id. ¶¶ 13–41.

**\*2** The temporary custody orders are "suspect, gained under lies and false pretenses, and should therefore be considered invalid." Id. ¶ 40.

As a result of improper conduct by Defendants, Plaintiff has been injured and suffered harm, worry, anxiety, sleeplessness, and a loss of protected family and liberty rights. Id. ¶ 48. Defendants are liable to her in an amount no less than $1,000,000, separately and collectively. Id. ¶¶ 45–48.

The Court construes the following claims: (1) a Fourteenth Amendment equal protection claim under § 1983 on behalf of Plaintiff's minor children, against Drescher and Foley; (2) a Fourteenth Amendment due-process claim under § 1983 on behalf of Plaintiff's minor children, against Judge Cholakis; (3) a Fourteenth Amendment "equal protection" claim and due-process claim under § 1983 and § 1985 against Judge Cholakis, Drescher, and Foley; (4) defamation claims against Foley and Drescher; (5) a claim against Judge Cholakis based on her lack of judicial competence; and (6) a claim for declaratory relief, seeking a declaration that the temporary custody order imposed by Judge Cholakis is invalid.

### III. LEGAL STANDARD

"Pursuant to [Rule] 12(b)(1), a party may, prior to serving a responsive pleading, move to dismiss a complaint on the ground the Court lacks subject matter jurisdiction. When a federal court lacks the statutory or constitutional power to adjudicate a case, it must be dismissed irrespective of its merits." McCluskey v. Town of E. Hampton, No. 13-CV-1248, 2014 WL 3921363, at *2 (E.D.N.Y. Aug. 7, 2014) (citing Makarova, 201 F.3d at 113). Thus, "[w]hen defendants move for dismissal on a number of grounds, the 'court should consider the Rule 12(b)(1) challenge first since it must dismiss the complaint for lack of subject matter jurisdiction, and the accompanying defenses and objections become moot and do not need to be determined.' " Lipin v. National Union Fire Ins. Co. of Pittsburgh, Pa., 202 F. Supp. 2d 126, 132 (S.D.N.Y. 2002) (quoting Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)). Plaintiff bears the burden of establishing the Court's subject matter jurisdiction by a preponderance of the evidence. Id.

The Court recognizes that pro se plaintiffs enjoy a more liberal pleading standard. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). "This is particularly so when the pro se plaintiff alleges that her civil rights have been violated." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). But pro se plaintiffs must still "comport with the procedural and substantive rules of law." Javino v. Town of Brookhaven, No. 06-CV-1245, 2008 WL 656672, at *3 (E.D.N.Y. Mar. 4, 2008). To survive a 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atl. Corp. v Twombly, 550 U.S. 544, 545 (2007).

### IV. DISCUSSION

**\*3** The Court grants the Defendants' Motion to Dismiss because there is a lack of subject matter jurisdiction, Plaintiff cannot assert claims on behalf of her minor children, and Defendants are protected by various forms of immunity.

#### A. The Court Lacks Subject Matter Jurisdiction

Drescher and Foley move to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under the Rooker-Feldman doctrine and the Younger Abstention doctrine. Foley Mem. at 1, 9; Drescher Mem. at 8, 10. All Defendants move to dismiss for lack of subject matter jurisdiction under the Domestic Relations exception. Foley Mem. at 8; Drescher Mem. at 7; Cholakis Mem. at 5. The Court analyzes each doctrine in turn.

#### 1. Rooker-Feldman Doctrine

Defendants Foley and Drescher argue that Plaintiff's claims must be dismissed pursuant to the Rooker-Feldman doctrine. Foley Mem. at 1; Drescher Mem. at 8. This doctrine "pertains not to the validity of the suit but to the federal court's subject matter jurisdiction to hear it." Vossbrinck v. Accredited HomeLenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014). The Rooker-Feldman doctrine bars "federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " Sykes v Mel S. Harris and Assoc. LLC, 780 F.3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

Case 3:25-cv-00695-LEK-MJK   Document 6   Filed 07/01/25   Page 44 of 129

Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)

2020 WL 3503158

Accordingly, the Rooker Feldman doctrine has four requirements: (1) the plaintiff must have lost in state court; (2) the loss must have occurred before the district court proceedings commenced; (3) the plaintiff must complain of injuries caused by a state court judgment; and (4) the plaintiff must invite district court review and rejection of that judgment. Hoblock v. Albany County. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). The first and second requirements are "loosely termed" procedural, while the third and fourth requirements are substantive. Id.

The Rooker-Feldman doctrine does not bar jurisdiction in this action because the Plaintiff's claims do not meet the first requirement: Plaintiff did not lose in state court. The Rooker-Feldman doctrine does not apply when the state court had not entered a final custody order because the "outcome of the state action is unclear" and the "court proceedings never reached a final outcome that would be appealable in state court". Krowicki v. Sayemour, No. 16-CV-1186, 2016 WL 9227665, at *5 (N.D.N.Y. Oct. 5, 2016) (citing Green v. Mattingly, 585 F.3d 97, 102 (2d Cir. 2009), report and recommendation adopted by No. 16-CV-1186, 2017 WL 2804945 (N.D.N.Y. June 21, 2017)). Plaintiff commenced this action due to a loss in temporary custody of her children pursuant to a court order. Compl. ¶ 10. A final custody order to remove her children has not been issued. Id. ¶ 11. Given these circumstances, Plaintiff has not "lost" in state court. Green, 585 F.3d at 102. Therefore, the Court finds that Rooker-Feldman does not bar Plaintiff's claims.

### 2. *Younger* Abstention

Drescher and Foley argue that Plaintiff's claims are also barred by the doctrine of Younger abstention. Foley Mem. at 9; Drescher Mem. at 10. There is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v Garden State Bar Ass'n, 457 US 423, 431 (1982). The Younger abstention doctrine "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." Torres v. Gains, 130 F. Supp. 3d 630, 635 (D. Conn. 2015) (citing Younger v. Harris, 401 U.S. 37, 43–44 (1971)). "[Younger] abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional

claims." Morpurgo v Inc. Vil. of Sag Harbor, 327 F. Appx. 284, 285 (2d Cir. 2009) (quoting Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002)).

**\*4** The Court must abstain from exercising jurisdiction over the present case. This suit undoubtedly "raises important state interests," because the Plaintiff has challenged a temporary order in an ongoing child custody dispute. Graham v N.Y. Ctr. for Interpersonal Dev., No. 15-CV-459, 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015) (quoting Reinhardt v. Com. of Mass. Dep't of Social Servs., 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989)). Additionally, "[Plaintiff] is able to raise any potential constitutional claims in the state court system." Graham, 2015 WL 1120120, at *3. [1] Plaintiff stated that the temporary custody order was gained under "lies and false pretenses and therefore should be considered invalid." Compl. ¶40. Thus, in addition to seeking monetary damages, Plaintiff is seeking declaratory relief. Younger abstention effectively bars a plaintiff's claims for declaratory relief. See Morpurgo, 327 F. Appx. at 285–86 (holding that Younger barred plaintiff's claims for injunctive and declaratory relief). Therefore, Plaintiff's claims for declaratory relief are barred by Younger.

[1]     The appropriate place for a party to appeal a final decision made in Rensselaer County Family Court is the Supreme Court of New York, Appellate Division, Third Department. Family Ct. Act § 1111.

Conversely, the Second Circuit "[has] held that abstention and dismissal are inappropriate when [monetary] damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief." Kirschner v. Klemons, 225 F3d 227, 238 (2d Cir. 2000). In Morpurgo, for instance, the Court abstained from exercising jurisdiction over the plaintiff's claims for injunctive relief pursuant to Younger but did not bar the plaintiff's claims for monetary relief. 327 Fed. App'x at 286. Likewise, Plaintiff's claims for monetary relief are not barred by Younger.

Pursuant to Younger abstention, the Court is barred from exercising subject matter jurisdiction over Plaintiff's claim for declaratory relief. Although Younger does not bar Plaintiff's claims for monetary relief, as discussed above, all of Plaintiff's claims seeking monetary relief are dismissed for a lack of subject matter jurisdiction under the domestic relations exception.

### 3. Domestic Relations Exception

Defendants argue that Plaintiff's claims are barred by the domestic relations exception. Foley Mem. at 8; Drescher Mem. at 7; Cholakis Mem. at 5. It is well-settled that federal courts generally do not have jurisdiction over domestic relations matters, which include divorce, child custody, child support, and alimony. Marshall v. Marshall, 547 U.S. 293, 294–295 (2006). This policy exception exists because the states have developed competence and expertise in adjudicating marital and custody disputes, a skill that the federal courts traditionally lack. See Thomas v. New York City, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Claims that: (1) attempt to "rewrit[e] a domestic dispute as a tort claim for monetary damages," Schottel v. Kutyba, No. 06-1577-CV, 2009 WL 230106, at *6 (2d Cir. Feb. 2, 2009); or (2) allege constitutional violations but whose injuries "stem directly from the disputed family court decision," Amato v. McGinty, No. 17-CV-593, 2017 WL 4083575, at *5 (N.D.N.Y. Sep. 15, 2017), will be barred under the domestic relations exception.

Here, Plaintiff's claims fail because they stem directly from a child custody decision. Plaintiff commenced a civil rights action and has alleged that the actions and decisions of Judge Cholakis, Foley, and Drescher were unconstitutional. Compl. ¶¶ 45–48. Although she is not directly seeking a rejection of state judgment in her request for relief, the "crux of the argument" arises out of the temporary custody order because the Court would need to "re-examine and reinterpret" the state court order and evidence surrounding the order to effectively address her constitutional claims. Amato, 2017 WL 4083575, at *5; see also Pappas v. Zimmerman, No. 13-CV-4883, 2014 WL 3890149, at *4 (E.D.N.Y. Aug. 6, 2014) (holding that the domestic relations exception barred the plaintiff's claims because she raised constitutional issues that invited the federal court to "re-examine and reinterpret" state court divorce proceedings).

 *5  In Amato, although plaintiffs alleged that the "order and processes" of the family court were unconstitutional, the domestic relations exception applied because plaintiff's injuries "stem[med] directly" from the disputed family court custody decision. 2017 WL 4083575, at *5. Likewise, Plaintiff's claims are barred under the domestic relations doctrine, because she invited the Court to re-examine and reinterpret a temporary custody order made in Family Court, and her injuries stem directly from this custody decision.

Additionally, to obtain a review of the state court decision, Plaintiff has rewritten a domestic dispute as a tort claim for monetary damages. This Court recently clarified that state courts are better suited to adjudicate tort claims that "begin and end in a domestic dispute." Dodd v. O'Sullivan, 19-CV-560, 2019 WL 2191749, at *4 (N.D.N.Y. May 21, 2019) (quoting Schottel, 2009 WL 23106, at *1), report and recommendation adopted by 519-CV-560, 2020 WL 204253 (N.D.N.Y. Jan. 14, 2020) (Kahn, J.). Therefore, pursuant to the domestic relations exception, the Court dismisses Plaintiff's claims for monetary relief for lack of subject matter jurisdiction.

## B. Plaintiff Cannot Assert Claims on Behalf of Her Minor Children

Defendants move to dismiss Plaintiff's claims made on behalf of her minor children. Foley Mem. at 8; Drescher Mem. at 9; Cholakis Mem. at 8. "Federal Rule of Civil Procedure 17(c)(1)(A) permits a guardian to bring suit on behalf of a minor." Hagans v Nassau County Dept. of Social Services, 18-CV-1917, 2020 WL 1550577, at *4 (E.D.N.Y. Mar. 31, 2020). However, it is well established that a pro se plaintiff lacks the authority to represent anyone other than herself in a court action, including her child. Cheung v. Youth Orchestra Found of Buffalo Inc., 906 F.2d 59, 61 (2d Cir. 1990); LeClair v. Vinson, 19-CV-28, 2019 WL 1300547, at *4 (N.D.N.Y. Mar. 21, 2019), report and recommendation adopted by 19-CV-28, 2019 WL 2723478 (N.D.N.Y. July 1, 2019). This restriction exists because "the choice to appear pro se is not a true choice for minors who under state law cannot determine their own legal actions." Cheung, 906 F.3d at 61 (citation omitted).

Plaintiff purports to represent her minor children in this action. Compl. ¶¶ 42, 45–48. Accordingly, Plaintiff's claims alleging constitutional violations of her children's rights should be dismissed.

## C. Defendants Are Entitled to Immunity

Defendants assert that Plaintiff's claims should be dismissed under 12(b)(6), because even if the case had proper subject matter jurisdiction, Plaintiff fails to state a claim upon which relief can be granted, as Defendants are protected by quasi-judicial immunity, absolute immunity, and sovereign immunity.

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 46 of 129

Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)

2020 WL 3503158

### *1. Quasi-Judicial Immunity*

Foley argues that as an appointed attorney, his actions are protected by quasi-judicial immunity. Foley Mem. at 6. "Law guardians are entitled to quasi-judicial immunity for actions pertaining to their representation of a child in family court." Amato, 2017 WL 4083575, at *3. Quasi-judicial immunity is absolute and protects court-appointed guardians from civil liability. Lewittes v. Lobis, 4-CV-155, 2004 WL 1854082, at *11 (S.D.N.Y. Aug. 19, 2004) aff'd, 164 F. Appx. 97 (2d Cir. 2006). Foley was appointed by Judge Kehn to represent Plaintiff's children. Thus, Foley, who is being sued for conduct he engaged in when representing Plaintiff's children, is protected from suit under quasi-judicial immunity.

### *2. Absolute Immunity*

**\*6** Drescher argues that he is entitled to absolute immunity from defamation claims for all statements made during the family court proceedings. Drescher Mem. at 11–12. Attorneys have absolute immunity from liability for defamation "when such words and writings [made during a court proceeding] are material and pertinent to the questions involved." Front, Inc. v. Khalil, 24 N.Y.3d 713, 718 (2015) (quoting Youmans v. Smith, 153 N.Y. 214, 265 (1897)). This immunity allows an attorney to "speak freely to zealously represent their clients without fear of harassment or financial hazard." Park Knoll Assoc. v. Schmidt, 59 N.Y.2d 205, 209 (1983). When there is an absolute privilege, the defendant has immunity from liability regardless of motive. Id.

Plaintiff alleges that Foley and Drescher conspired with Judge Cholakis to deprive her of her constitutional and civil rights. Compl. ¶ 10. Plaintiff further alleges that Drescher and Foley gave "false and misleading statements" to Judge Cholakis that were "full of innuendo and not backed up by any factual evidence." Id. ¶ 13. Plaintiff believes that Drescher's language was full of "deceit", "character assassination, and perjury." Id. ¶ 27. Given that there are no factual allegations to support any other claim on these facts, [2] the Court has construed Plaintiff's allegations against Drescher as a claim for defamation, for which Drescher has absolute immunity. [3]

[2]    Plaintiff alleges that Defendants acted in concert to deprive her of her constitutional and civil rights under § 1983 and § 1985. To state a claim under

§ 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived them of that right acted under color of state law.' " Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)). Private individuals who are not state actors (not acting under the color of state law) may be liable under § 1983 "if they have conspired with or engaged in joint activity with state actors." Storck v. Suffolk County Dept. of Social Services, 62 F. Supp. 2d 927, 940 (E.D.N. Y 1999). Allegations of conspiracy cannot be vague nor conclusory but must allege with "some degree of particularity" clear acts that defendants engaged in that were reasonably related to the alleged conspiracy. Id. Plaintiff did not allege any specific acts that Drescher and Foley engaged in that would indicate a conspiracy with Judge Cholakis. Therefore, the allegation should be dismissed under 12(b)(6) because Plaintiff fails to state a claim under § 1983 against Drescher and Foley. Similarly, to state a claim under § 1985, the plaintiff's claim must contain more than conclusory or vague allegations of conspiracy. Storck, 62 F. Supp. 2d at 940. Accordingly, Plaintiff's § 1985 claim should be dismissed under 12(b)(6) as well.

[3]    An individual can file an attorney misconduct complaint with the Third Judicial Department Attorney Grievance Committee in Albany, NY. New York State Unified Court System, Judicial Conduct, Attorneys, *Grievance Complaints*, http://ww2.nycourts.gov/attorneys/grievance/complaints.shtml (last visited June 26, 2020).

### *3. Sovereign Immunity*

Judge Cholakis argues that all claims against her are barred by judicial immunity and Eleventh Amendment sovereign immunity. Cholakis Mem. at 2–5. Judicial immunity protects conduct "taken as part of all judicial acts except those performed in the clear absence of jurisdiction." LeClair, 2019 WL 1300547, at *7; see also Stump v. Sparkman, 435 U.S. 349, 356–57 (1978). When determining the limits of judicial action, the judge's jurisdictional scope must be construed broadly. LeClair, 2019 WL 1300547, at *7. This immunity is designed to benefit the public, so that the judge may

Walker v. Family Court Judge Catherine Cholakis, Not Reported in Fed. Supp. (2020)

2020 WL 3503158

exercise her functions with "independence and without fear of consequences." Id. Further, the Eleventh Amendment bars a plaintiff from bringing suit in federal court against a state, its agencies, or officials unless the state consents to the suit or there is a statutory waiver of immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465, U.S. 89, 99–101 (1984).

**\*7** Judge Cholakis has absolute judicial immunity for all judicial actions that occurred within her judicial capacity. Accepting Plaintiff's allegations as true, all of Judge Cholakis's actions occurred while she was working within her judicial capacity to determine the proper custody for Plaintiff's children. Plaintiff alleges that Judge Cholakis demonstrated a lack of judicial competence and exhibited "personal animus and bias" against her. Id. ¶¶ 13–41. However, "[t]his immunity applies even when the judge is accused of acting maliciously and corruptly." Amato, 2017 WL 4083575, at \*3 (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)). Accordingly, Judge Cholakis is entitled to judicial immunity.

Judge Cholakis is also protected under sovereign immunity. In Gollomp v. Spitzer, the Court held that the New York Unified Court System is an "arm of the State" and affirmed the dismissal of a § 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365–68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge Cholakis, a member of the Rensselaer County Family Court, which is part of the New York Unified Court System. Compl. ¶3; N.Y. Const. Art. VI, §§ 1, 13. All of Judge Cholakis's alleged constitutional violations occurred while she acted within her official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge Cholakis should be dismissed, because "a suit against a state official in [her] official capacity is, in effect, a suit against the state itself, which is barred." Berman Enterprises, Inc. v Jorling, 3

F.3d 602, 606 (2d Cir. 1993) (citing Hafer v. Melo, 502 U.S. 21, 21 (1991)). [4]

[4]    A complaint regarding a judge's religious discrimination or bias may be filed with the USC Managing Inspector General for Bias Matters. New York State Unified Court System, *Judicial Conduct*, https://nycourts.gov/ip/judicialconduct/ index.shtml (last visited June 26, 2020). Similarly, if a party believes that a judge violated the Rules of Judicial Conduct, a complaint can be filed against the judge with the New York State Commission of Judicial Conduct. Id.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Foley's Motion to Dismiss (Dkt. No. 10), Drescher's Motion to Dismiss (Dkt. No. 13), and Cholakis's Motion to Dismiss (Dkt. No. 15) are **GRANTED**. Plaintiff's claims against Foley, Drescher, and Judge Cholakis are **DISMISSED** with prejudice, and without leave to amend; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3503158

---

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:19-CV-01288**<br>Walker v. Family Court Judge Catherine Cholakis et al | — | N.D.N.Y. | Oct. 18, 2019 | Docket |

**History**

There are no History results for this citation.

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 50 of 129

Washington v. Williams, Not Reported in Fed. Supp. (2019)

2019 WL 1876787

2019 WL 1876787
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

Jeannine Campbell WASHINGTON, Plaintiff,

v.

Dennis WILLIAMS, Jamal Jones, the Honorable
Ben Darvil, Jr., the Honorable Elizabeth
Barnett, Racoomyah Wise, Kasha Page, Mario
Ortiz, and Gladys Carrion, Esq., Defendants.

19-CV-00289 (MKB)
|
Signed 04/26/2019

**Attorneys and Law Firms**

Jeannine Campbell Washington, New York, NY, pro se.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge

*1 Plaintiff Jeannine Campbell Washington, proceeding *pro se*, commenced the above-captioned action on January 10, 2019 against Defendants the Honorable Ben Darvil, Jr. and the Honorable Elizabeth Barnett (the "Judicial Defendants"), Dennis Williams, Jamal Jones, Racoomyah Wise, and Kasha Page (the "Private Individual Defendants"), and two individuals employed by the New York City Administration for Children Services ("ACS"), Mario Ortiz and Gladys Carrion, Esq. (the "ACS Defendants"), pursuant to 42 U.S.C. § 1983. (Compl. 10, Docket Entry No. 1.) [1] Plaintiff alleges that she was "sexually assaulted and extorted" and that Williams and Jones made "false reports of kidnapping" to prevent Plaintiff from seeing her child. (*Id.* at 7.) The Court grants Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) for the purpose of this Memorandum and Order. For the reasons set forth below, the Court dismisses the Complaint and grants Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and Order.

[1]    Because the Complaint is not consecutively paginated, the Court refers to the page numbers

assigned by the Electronic Case Filing ("ECF") System.

**I. Background**

On January 8, 2019, Judge Darvil, of the Family Court of the State of New York, County of Kings, entered a final order awarding custody of Plaintiff's minor child to Williams, the child's father (the "January 2019 Custody Order"). (*Id.* at 14–15.) Judge Darvil also entered an order of protection in favor of Williams against Plaintiff. (*Id.* at 12–13.) Plaintiff alleges that Judge Darvil and Judge Barnett violated her rights during custody and neglect proceedings, (*id.* at 6, 10), that Williams, Jones, and Wise denied her access to her child and attacked her, (*id.* at 10), that Page made false statements that caused Plaintiff to be arrested, (*id.*), that Ortiz unlawfully removed her child, (*id.* at 11), and that Carrion, the former ACS Commissioner, filed a false neglect petition against her, (*id.*). Plaintiff seeks $ 250 million in damages. (*Id.* at 8.)

**II. Discussion**

**a. Standard of review**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

Case 3:25-cv-00695-LEK-MJK   Document 6   Filed 07/01/25   Page 51 of 129

Washington v. Williams, Not Reported in Fed. Supp. (2019)

2019 WL 1876787

### b. The Court lacks jurisdiction over Plaintiff's domestic relations claims

**\*2** It is well-settled that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94 (1890); *see also United States v. Windsor*, 570 U.S. 744, 745 (2013) ("[S]ubject to [constitutional] guarantees, regulation of domestic relations is an area that has long been regarded as a virtually exclusive province of the States." (citation and internal quotation marks omitted)); *Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law ... is an area of law that federal courts and Congress leave almost exclusively to state law and state courts."). "So strong is [the Supreme Court's] deference to state law in this area that [the Supreme Court has] recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' " *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 112–13 (2004) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *see also Keane v. Keane*, 549 F. App'x 54, 55 (2d Cir. 2014) (stating that the "domestic relations exception to subject matter jurisdiction generally encompasses ... cases involving the issuance of a divorce, alimony, or child custody decree" (citation and internal quotation marks omitted)); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("Since the very early dicta [of] *In re Burrus*, 136 U.S. 586 (1890), it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, *a fortiori*, rights of visitation."); *Ashmore v. New York*, No. 12-CV-3032, 2012 WL 2377403, at \*1 (E.D.N.Y. June 25, 2012) ("Federal courts 'lack[ ] jurisdiction to interfere with ... ongoing state court proceedings concerning the custody and care of ... children.' " (alterations in original) (quoting *Abidekun v. N.Y.C. Bd. of Educ.*, No. 94-CV-4308, 1995 WL 228395, at \*1 (E.D.N.Y. Apr. 6, 1995))).

Although the Supreme Court has advised that the exception generally "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree," *Ankenbrandt*, 504 U.S. at 704, the Second Circuit has repeatedly held that "subject matter jurisdiction may be lacking in actions directed at challenging the results of domestic relations proceedings," *Martinez v. Queens Cty. Dist. Att'y*, 596 F. App'x 10, 12 (2d Cir. 2015) (citing *Ankenbrandt*, 504 U.S. at 705), and that "a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages,"

*Schottel v. Kutyba*, 2009 WL 230106, at \*1 (2d Cir. Feb. 2, 2009) (summary order) (citing *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)). *See also Keane*, 549 F. App'x at 55 (affirming dismissal of a plaintiff's action for fraud against her ex-husband under domestic relations exception); *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) ("A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." (quoting *Bossom v. Bossom*, 551 F.2d 474, 475 (2d Cir. 1976))); *cf. Minot v. Eckardt-Minot*, 13 F.3d 590, 593–94 (2d Cir. 1994) (affirming district court decision to remand to state court after abstaining from case seeking to enforce New York custody orders); *Tait v. Powell*, 241 F. Supp. 3d 372, 378 (E.D.N.Y. 2017) (dismissing complaint for lack of subject matter jurisdiction as it sought "to bring to federal court a dispute that center[ed] on the custody of children").

Accordingly, to the extent that Plaintiff challenges the child custody results of the Family Court proceedings, this Court is without jurisdiction to review such matters.

### c. Plaintiff fails to state a claim under section 1983 against the Private Individual Defendants

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted). Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.' " *Hooda v. Brookhaven Nat'l Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("[T]he under[-]color-of-state-law element of [section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (citation and internal quotation marks omitted)). Thus, a claim for relief pursuant to section 1983 must allege facts showing that the challenged conduct

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 52 of 129
Washington v. Williams, Not Reported in Fed. Supp. (2019)

2019 WL 1876787

was "committed by a person acting under color of state law." *42 U.S.C. § 1983*.

**\*3**  "To act under color of state law or authority for purposes of *section 1983*, the defendant must 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)); *see United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999). "It is 'axiomatic that under color of law means pretense of law and that acts of officers in the ambit of their personal pursuits are plainly excluded.' " *Monsky*, 127 F.3d at 245 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547–48 (2d Cir. 1994)).

Plaintiff has not alleged that the Private Individual Defendants were acting under color of state law when they allegedly deprived Plaintiff of her constitutional rights. Accordingly, Plaintiff's *section 1983* claims against the Private Individual Defendants are dismissed for failure to state a claim upon which relief may be granted. *See Azkour v. Bowery Residents Comm., Inc.*, 646 F. App'x 40, 41 (2d Cir. 2016) (affirming dismissal of a *section 1983* claim because the defendant was a private entity, not a state actor).

### d. Plaintiff's section 1983 claim against the ACS Defendants is time-barred

The statute of limitations for *section 1983* claims brought in a federal court in New York is three years from the date the underlying violation occurred. *See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015); *Melendez v. Greiner*, 477 F. App'x 801, 803 (2d Cir. 2012) (quoting *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)); *Harrison v. Lutheran Med. Ctr.*, 468 F. App'x 33, 36 (2d Cir. 2012). "While the applicable statute of limitations in a *§ 1983* case is determined by state law, 'the accrual date of a *§ 1983* cause of action is a question of federal law that is not resolved by reference to state law.' " *Smith*, 782 F.3d at 100 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Accrual occurs when the plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citations omitted) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)); *see also Shomo*, 579 F.3d at 181 ("A Section 1983 claim ordinarily accrues when the plaintiff knows or has reason to know of the harm." (internal citation and quotation marks omitted)).

Plaintiff alleges that the ACS Defendants unlawfully removed Plaintiff's minor child in March of 2015. (Compl. 7, 29.) The statute of limitations for claims arising out of the removal of her minor child therefore expired in March of 2018. Plaintiff commenced this action on January 10, 2019. (Compl.) Plaintiff's claims against the ACS Defendants are therefore time-barred. [2]

> [2]  Nor has Plaintiff shown that she is entitled to equitable tolling of the statute of limitations. Plaintiff has not alleged that (1) she has been pursuing her rights diligently; or (2) that some extraordinary circumstances stood in her way and prevented timely filing. *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) ("[A] litigant seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.' " (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)); *see also Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." (quoting *Zerilli-Edelglass v. N.Y.C. Transit Authority*, 333 F.3d 74, 80 (2d Cir. 2003))). Accordingly, Plaintiff has not provided any facts from which the Court could conclude that the statute of limitations should be tolled.

### e. Plaintiff's section 1983 claim against the Judicial Defendants is barred by absolute immunity

**\*4**  Judges have absolute immunity for acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (upholding applicability of judicial immunity in *section 1983* actions); *Burdick v. Town of Schroeppel*, 717 F. App'x 92, 93 (2d Cir. 2018) ("Judges acting in their judicial capacity are absolutely immune from suit, event where the plaintiff asserts constitutional violations under *§ 1983*." (citing *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)); *Shtrauch v. Dowd*, 651 F. App'x 72, 73 (2d Cir. 2016) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." (quoting *Bliven*, 579 F.3d at 209)). "[J]udicial immunity is not overcome by allegations of bad faith or

**Washington v. Williams, Not Reported in Fed. Supp. (2019)**

2019 WL 1876787

malice," and a judge cannot "be deprived of immunity because the action [the judge] took was in error ... or was in excess of [the judge's] authority." *Mireles*, 502 U.S. at 11–13 (citations and internal quotation marks omitted) (second alteration in original); *Basile v. Connolly*, 513 F. App'x 92, 94 (2d Cir. 2013) (quoting same); *Huminski v. Corsones*, 386 F.3d 116, 137–38 (2d Cir. 2004) (same). Immunity may only be overcome where (1) the challenged acts were not taken in the judge's judicial capacity or (2) the acts, "though judicial in nature, [were] taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12; *see also Gross v. Rell*, 585 F.3d 72, 82 (2d Cir. 2009) (same).

Plaintiff has not alleged any facts to suggest that any challenged actions taken by the Judicial Defendants were not taken in their judicial capacity or that the Judicial Defendants lacked jurisdiction. Therefore, the Judicial Defendants are entitled to judicial immunity. Accordingly, the Court dismisses Plaintiff's claims against the Judicial Defendants.

#### f. Leave to amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint within thirty (30) days of this Memorandum and Order. To the extent that Plaintiff seeks to pursue claims arising out the removal of her child, Plaintiff should name the individual ACS employee or employees who were personally involved in the purported unlawful removal. Plaintiff must also set forth what these employees did or failed to do in violation of Plaintiff's constitutional rights, and must provide the date and location of each alleged action. Plaintiff should also set forth whether ACS provided her with notice related to the removal of her minor child and whether she attended any state court proceedings concerning the removal of her child. Finally, Plaintiff must provide facts to show why her claims are not time-barred or provide reasons for her failure to file the Complaint within three years of the alleged removal.

Plaintiff must include any and all allegations that she wishes to pursue in her amended complaint, as it will completely replace the original Complaint. The amended complaint should be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order.

### III. Conclusion

For the reasons set forth above, the Court dismisses Plaintiff's Complaint and grants Plaintiff leave to file a second amended complaint within thirty (30) days of the date of this Memorandum and Order. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2019 WL 1876787

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    4

**Filings**

There are no Filings for this citation.

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

**I. In Forma Pauperis**

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint.[1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

[1]    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's

complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2]    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

**II. Initial Review**

**A. Legal Standards**

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]     Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983.

See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld intended exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]    Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

**\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts[5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has

Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5]    Plaintiff did not provide any transcripts.

## C. Discussion [6]

[6]    As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5**    As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by

actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at *3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

[7]    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because

plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a <u>Heck</u> dismissal. The undersigned has included the <u>Heck</u> review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge"[8] such claims would be barred by judicial immunity.

[8]    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by <u>Rooker-Feldman</u>, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by <u>Younger</u>. See <u>Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024)</u> (citations omitted), <u>report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024)</u> ("Under the <u>Rooker-Feldman</u> doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); <u>see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002)</u> ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." <u>Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017)</u>

(citing <u>Mireles v. Waco, 502 U.S. 9, 9-10 (1991)</u> (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " <u>Id.</u> (quoting <u>Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)</u>). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." <u>Id.</u> (citation omitted); <u>see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013)</u> (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." <u>Zavalidroga, 2017 WL 8777370, at *8</u> (citing <u>Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)</u>). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " <u>Id.</u> (quoting <u>Mireles, 502 U.S. at 11-12</u>). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " <u>Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014)</u> (quoting <u>Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011)</u> (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." <u>Ceparano, 404 F. App'x at 539</u> (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " <u>Ceparano, 404 F. App'x at 539</u> (quoting <u>Stump v. Sparkman, 435 U.S. 349, 362 (1978)</u>). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " <u>Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009)</u> (quoting <u>Mireles, 502 U.S. at 11</u>).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired

Administrative Law Judge," Judge Catena is also protected
by absolute judicial immunity as a judge's retirement, "does
not impact [his or] her immunity for acts taken in [his or]
her official capacity before her retirement." McCray v. Lewis,
No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2
(E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to
sue the judges their official capacities, the suit is barred by the
Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp.
3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment
shields judges from suit to the extent that they are sued in their
official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his
"relief" section of the form complaint, "the Supreme Court
Appellate Division, Third Department" when stating that he
experienced "deliberate misconduct and malice." Compl. at
7. He does not name this Court as a defendant anywhere in
the complaint. However, even if plaintiff were to have named
the Appellate Division, Third Department as a defendant,
such defendant would also need to be dismissed based on
Eleventh Amendment immunity as the Appellate Division "is
merely an agency or arm of New York State." Benyi v. New
York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1404649, at
*5 (N.D.N.Y. Mar. 23, 2021), report and recommendation
adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y.
Apr. 13, 2021) (citation omitted). Accordingly, to the extent
a liberal reading of the complaint may suggest that plaintiff
seeks to name the Appellate Division as a defendant, such
claims are barred by Eleventh Amendment immunity. See
Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V.
Maxwell, Esq., Assistant District Attorney, in addition to the
Heck issues noted above, he would be protected by absolute
prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability
> for those prosecutorial activities 'intimately associated
> with the judicial phase of the criminal process.' " Barr v.
> Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler
> v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity
> encompasses "virtually all acts, regardless of motivation,
> associated with [the prosecutor's] function as an advocate."
> Hill v. City of New York, 45 F.3d 653, 661 (2d Cir.
> 1995) (internal quotations and citation omitted). Absolute
> immunity applies when a prosecutor's conduct, acting as an
> advocate during the judicial phase of the criminal process,
> "involves the exercise of discretion." Flagler v. Trainor,
> 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher,
> 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity extends to functions such
as "deciding whether to bring charges and presenting a case
to a grand jury or a court, along with the tasks generally
considered adjunct to those functions, such as witness
preparation, witness selection, and issuing subpoenas."
Simon v. City of New York, 727 F.3d 167, 171 (2d
Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see
also Flagler, 663 F.3d at 547 (explaining, "the Supreme
Court has found prosecutors absolutely immune from
suit for alleged misconduct during a probable cause
hearing, in initiating a prosecution, and in presenting
the State's case ... [but] withheld absolute immunity for
conduct unrelated to advocacy, such as giving legal advice,
holding a press conference, or acting as a complaining
witness."). "[O]nce a court determines that challenged
conduct involves a function covered by absolute immunity,
the actor is shielded from liability for damages regardless
of the wrongfulness of his motive or the degree of injury
caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503
(2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193,
199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024
WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report
and recommendation adopted, No. 5:24-CV-573, 2024 WL
3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld
potentially exculpatory material" that was used against
him. Compl. at 4. Beyond the Heck barriers already
discussed, even if plaintiff could amend to provide greater
detail, absolute immunity would extent to even this alleged
misconduct as such allegations clearly fall within the scope
of prosecutorial immunity. Accordingly, it is recommended that
any claims against ADA Samuel V. Maxwell be dismissed
for absolute prosecutorial immunity. "Furthermore, because
the District Attorney's prosecutorial immunity is substantive
and not something that can be corrected by a better pleading,
I recommend that the dismissal be with prejudice." Phillips
v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5
(N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222
F.3d 99, 223 (2d Cir. 2000)). [9]

[9]    Plaintiff appears to characterize his submissions as
       a purported removal to federal court or suggests
       that he seeks to remove his case from Montgomery
       County Court to this Court. See Dkt. No. 7
       (citing 28 U.S.C. § 1441). However, in addition

to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10] The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 4870495

---

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:24-CV-00847**<br>Cole v. Smrtic et al | — | N.D.N.Y. | July 08, 2024 | Docket |

**History (2)**

**Direct History (2)**

1.  Cole v. Smrtic 🔖
    2024 WL 4870495 , N.D.N.Y. , Nov. 21, 2024

    *Report and Recommendation Adopted by*

2.  Cole v. Smrtic
    2025 WL 247901 , N.D.N.Y. , Jan. 21, 2025

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1291533
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott LESSON, Plaintiff,

v.

Jane DOE / State Trooper, Defendant.

1:25-cv-00188 (AMN/TWD)

|

Signed May 5, 2025

**Attorneys and Law Firms**

SCOTT LESSON, Saratoga County Jail, 6010 County Farm Road, Ballston Spa, New York 12020, Plaintiff, pro se.

**ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On February 10, 2025, *pro se* plaintiff Scott Lesson ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against an unknown New York State Trooper. Dkt. No. 1 ("Complaint"). Plaintiff sought and was granted leave to proceed *in forma pauperis*. Dkt. Nos. 4, 6.

This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on March 26, 2025, recommended that the Complaint be dismissed with leave to amend. Dkt. No. 6 ("Report-Recommendation"). Magistrate Judge Dancks advised that pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 7-8. [1] No party has filed objections to the Report-Recommendation and the time for filing objections has expired.

[1]    Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

**II. STANDARD OF REVIEW**

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b) advisory committee's notes to 1983 addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 08-cv-322, 2011 WL 933846, at \*1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at \*1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at \*1 n.1 (N.D.N.Y. Nov. 14, 2017)).

**\*2** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at \*2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567,

2025 WL 1291533

2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Because no party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

Magistrate Judge Dancks determined that Plaintiff's allegations failed to set forth a claim for excessive force, as Plaintiff did not identify what force the unidentified state trooper purportedly used against him, nor how it was excessive. Dkt. No. 6 at 5-6. Magistrate Judge Dancks also found that Plaintiff's allegations failed to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure. *Id.* at 4-5. As a result, Magistrate Judge Dancks recommended that the Complaint be dismissed with leave to amend. *Id.* at 6-7. The Court agrees with Magistrate Judge Dancks' findings and recommendations for the reasons set forth in the Report-Recommendation. Having reviewed the Report-Recommendation for clear error, and found none, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 6, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**; [2] and the Court further

[2]   As set forth in the Report-Recommendation, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Dkt. No. 5 at 6–7.

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules. [3]

[3]   The Clerk shall also provide Plaintiff, at both his address of record and the future address he provided, Dkt. No. 2, with copies of all unreported decisions herein.

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 1291533

---

**End of Document**                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

1. Lesson v. Doe
2025 WL 915777 , N.D.N.Y. , Mar. 26, 2025

*Report and Recommendation Adopted by*

2. Lesson v. Doe
2025 WL 1291533 , N.D.N.Y. , May 05, 2025

**Filings**

There are no Filings for this citation.

Quick v. Westchester County, Not Reported in Fed. Supp. (2019)

2019 WL 1083784

2019 WL 1083784
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Markim QUICK, Plaintiff,
v.
WESTCHESTER COUNTY, et al., Defendants.

No. 18-CV-243 (KMK)
|
Signed 03/07/2019

**Attorneys and Law Firms**

Markim Quick, Malone, NY, Pro Se Plaintiff.

Mony B.P. Yin, Esq., Bennett, Bricklin & Saltzburg LLC, New York, NY, Counsel for Defendants.

OPINION & ORDER

KENNETH M. KARAS, UNITED STATES DISTRICT JUDGE

**\*1** Markim Quick ("Plaintiff"), currently incarcerated at Franklin Correctional Facility, brings this pro se Action under 42 U.S.C. § 1983 against Westchester County; Aramark Correctional Services ("Aramark"); Donna Blackman ("Blackman"), Shenelle Mosley ("Mosley"), and Manual Mendoza ("Mendoza"), each Aramark employees; Kevin Cheverko ("Cheverko"), Commissioner of the Westchester County Department of Correction ("WCDOC"); and Leandro Diaz ("Diaz"), Deputy Commissioner of WCDOC (collectively, "Defendants").[1] Plaintiff alleges that Defendants violated his constitutional rights while incarcerated at Westchester County Jail ("WCJ"). Before the Court is Defendants' Motion To Dismiss (the "Motion"). (*See* Not. of Mot. (Dkt. No. 37).)

[1]    In his Amended Complaint, Plaintiff identifies certain Defendants with incomplete or incorrectly spelled names. (*See* Am. Compl. 1–2 (Dkt. No. 10).) The Court uses the complete and correct spellings of Defendants' names as provided by Defendants.

For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, (Am. Compl. (Dkt. No. 10) ), and are taken as true for the purpose of resolving the instant Motion.

On May 4, 2017, Plaintiff arrived at WCJ. (Am. Compl. 4.)[2] Since his arrival, Plaintiff has received food that "smell[s] rotten"; that "is always pink, because it is not cooked right"; and that "seems to always have other inmates['] hair[ ] and plastic from the trays" in it. (*Id.*) Further, the "trays are so old that the plastic is peeling into the food" and "have mold and scum" and "leftover food" on them. (*Id.*) When Plaintiff complained about the undercooked food, an unnamed correction officer ("C.O.") told him to "cook it in the microwave." (*Id.*) Plaintiff believes "no one [witnesses] the inmates who prepare [the] food because the food is always not cooked" and "always has stuff or insects" in it. (*Id.* at 5.)

[2]    The Amended Complaint does not use consistent numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top right-hand corner of the Amended Complaint.

In particular, on December 6, 2017, Plaintiff ate "one of the meats" in an Aramark packaged meal and became sick — he became nauseous and vomited, got diarrhea, headaches, and stomach pain, and suffered weight loss and dehydration. (*Id.* at 4.) Plaintiff checked the packaging and "notice[d] it [had been] expired for" about two months and that "the pouch had a little hole on the cover, which possibly [caused] the package to rot." (*Id.*) Further, an unnamed C.O. "also noticed and observed the rotten[ ] meat pouch." (*Id.* at 5.) Plaintiff then "went to sick call," where he was examined by a doctor. (*Id.* at 4.) Plaintiff also wrote out a commissary complaint and told Defendant Mosley — identified as an "Aramark worker," (*id.* at 1) — who laughed at Plaintiff and told him to "go to medical," (*id.* at 5). Plaintiff further complained about the rotten food to Defendant Blackman — identified as an "Aramark commissary supervisor," (*id.* at 1) — who "did not answer"; however, an unnamed C.O. told Plaintiff that Blackman "said 'don't buy commissary then.' " (*Id.* at 5.)

**\*2** Plaintiff "wrote a [grievance] about all of this," alleging that Defendants Cheverko and Diaz, (*id.*) — Commissioner and Deputy Commissioner of WCDOC, respectively, (*id.* at 1) — along with Defendant Westchester County, "fail to watch

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 71 of 129

Quick v. Westchester County, Not Reported in Fed. Supp. (2019)

2019 WL 1083784

their workers" or "tra[i]n them" and that they "knew that this was going on from previous grievances[ ] and complaints but refused to change the problem," (*id.* at 5). Plaintiff further indicates that his grievance was denied and that he filed an appeal. (*Id.* at 7.)

### B. Procedural Background
Plaintiff's initial Complaint and application to proceed in forma pauperis ("IFP") were filed on January 10, 2018. (Dkt. Nos. 1, 2.) The Court granted Plaintiff's IFP application on January 24, 2018. (Dkt. No. 4.) On February 6, 2018, the Court issued an Order directing service on Defendants. (Dkt. No. 6.) Plaintiff filed the instant Amended Complaint on February 20, 2018; it is substantively identical to the initial Complaint but corrects the spelling of one Defendant's name. (Dkt. No. 10.)

On July 20, 2018, Defendants filed the instant Motion To Dismiss and accompanying papers. (Not. of Mot.; Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 38).) Plaintiff filed a response in opposition to the Motion on August 2, 2018. (Decl. of Markim Quick in Opp'n to Defs.' Mot. ("Pl.'s Mem.") (Dkt. No. 40).) On August 8, 2018, Defendants filed a reply. (Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 27).)

### II. Discussion

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds that Plaintiff failed to exhaust his administrative remedies, fails to allege personal involvement, fails to state a *Monell* claim, and fails to state an Eighth Amendment claim. (*See generally* Defs.' Mem.) The Court addresses each argument separately to the extent necessary.

### A. Standard of Review
The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal,* 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.' " (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2) ) ); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

**\*3** In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin,* 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations...." (quotation marks omitted) ). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court ... draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.,* 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 145 (2d Cir. 2012) ). Where, as here, a plaintiff proceeds pro se, the "complaint[ ] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell,* 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County,* 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform

Quick v. Westchester County, Not Reported in Fed. Supp. (2019)

2019 WL 1083784

themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted) ).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B. Analysis

1. Exhaustion

Defendants argue that the Amended Complaint must be dismissed because Plaintiff failed to exhaust his administrative remedies before filing suit. (*See* Defs.' Mem. 18.)

Although the Prison Litigation Reform Act's ("PLRA") exhaustion requirement is mandatory, *see Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), and "requires proper exhaustion, which means using all steps that the prison grievance system holds out," *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations, alterations, and quotation marks omitted), failure to exhaust is an affirmative defense, not a pleading requirement, *see Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (citations omitted). As such, Defendants bear the burden of proving failure to exhaust, *see McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."), and, as Plaintiff correctly notes, (*see* Pl.'s Mem. 4), "inmates are not required to specially plead or demonstrate exhaustion in their complaints," *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, "dismissal is appropriate on a motion to dismiss where failure to exhaust is clear on the face of the complaint." *Brinson v. Kirby Forensic Psych. Ctr.*, No. 16-CV-1625, 2018

WL 4680021, at *6 (S.D.N.Y. Sept. 28, 2018) (citations omitted).

Here, Defendants argue that, although Plaintiff filed a grievance regarding to the December 6, 2017 incident in which he got sick after allegedly eating rotten meat from damaged packaging, (Defs.' Mem. 19; *see also* Compl. 5–6), "[t]here is no proof that Plaintiff ... utilized the grievance process with respect to his" more general allegations of undercooked, rotten, and dirty food or untrained workers, (*id.*). This argument, however, improperly flips the burden of proof. *See McCoy*, 255 F. Supp. 2d at 248 ("[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."). Nor do Defendants submit documentation or other proof that the Court may consider in this context indicating that Plaintiff failed to complete the grievance process. *See Madison v. Wright*, No. 02-CV-10299, 2004 WL 816429, at *1 (S.D.N.Y. Apr. 13, 2014) (noting that "defendants must present proof of non-exhaustion" (citation and quotation marks omitted) ). Thus, it is not "clear on the face of the [C]omplaint" that Plaintiff has failed to exhaust, *Brinson*, 2018 WL 4680021, at *6, and, accordingly, the Court declines to dismiss on these grounds, *see White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *8 (S.D.N.Y. Dec. 21, 2018) (holding that defendants "offer no evidence showing that [the] [p]laintiff in fact failed to exercise the grievance process with respect to" a defendant). Defendants remain free to raise the exhaustion issue in the future "on a more fully-developed record." *Simmons v. Cripps*, No. 12-CV-1061, 2013 WL 1285417, at *3 (S.D.N.Y. Mar. 28, 2013).

2. Personal Involvement

**\*4** Defendants next argue that Plaintiff's Amended Complaint fails to show that any Defendant was personally involved in the alleged constitutional violations. (*See* Defs.' Mem. 9.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation." *Grullon*, 720 F.3d at 138. To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed

Quick v. Westchester County, Not Reported in Fed. Supp. (2019)

2019 WL 1083784

of the violation through a report or
appeal, failed to remedy the wrong,
(3) the defendant created a policy or
custom under which unconstitutional
practices occurred, or allowed the
continuance of such a policy or
custom, (4) the defendant was grossly
negligent in supervising subordinates
who committed the wrongful acts, or
(5) the defendant exhibited deliberate
indifference to the rights of inmates
by failing to act on information
indicating that unconstitutional acts
were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In
other words, "[b]ecause vicarious liability is inapplicable to ...
§ 1983 suits, a plaintiff must plead that each Government-
official defendant, through the official's own individual
actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.
Therefore, Plaintiff must plausibly allege that Defendants'
actions fall into one of the five categories identified above.
*See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL
365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five
categories "still control[ ] with respect to claims that do not
require a showing of discriminatory intent" post-*Iqbal* ).

Plaintiff names as individual Defendants Mendoza, Mosley,
Blackman, Cheverko, and Diaz. As an initial matter, although
Mendoza's name and title — Aramark "food service director"
— appear in the caption of the Amended Complaint, (*see*
Am. Compl. 1–2), Plaintiff fails to name or identify Mendoza
anywhere in the body of the Amended Complaint or otherwise
connect him to the allegations raised therein, (*see id.* at 4–
5). Accordingly, Plaintiff fails to allege Mendoza's personal
involvement. *See King v. Falco*, No. 16-CV-6315, 2018 WL
6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (holding personal
involvement not shown where the "plaintiff includes [the
defendant's] name in the case caption but fails to make
any substantive allegations against her in the body of the
complaint").

As to Mosley and Blackman — the Aramark-employee
individual Defendants — Plaintiff alleges that, after getting
sick from eating rotten meat on December 6, 2018, he
complained to Mosley, an "Aramark worker," (Am. Compl.
1), who laughed and told Plaintiff to "go to medical," (*id.* at 5),
and to Blackman, an "Aramark commissary supervisor," (*id.*

at 1), who "did not answer," (*id.* at 5). Plaintiff also alleges
that an unnamed C.O. told him that Blackman suggested
Plaintiff stop buying food from the commissary. (*Id.*) These
conclusory allegations fail to meaningfully connect Mosley or
Blackman to the rotten food that allegedly made Plaintiff sick.
There is no allegation that Mosley or Blackman participated
directly in the preparation or sale of food at all (let alone in the
preparation or sale of the particular food at issue), established
a policy or custom that allowed for rotten food to be provided
to inmates, failed to follow a policy or custom on food
preparation or were otherwise grossly negligent in allowing
others to prepare food without following proper procedures,
failed to remedy the food preparation problem after being
notified of the issue, or were deliberately indifferent to
Plaintiff's condition after being informed of his illness and
its cause. *See Grullon*, 720 F.3d at 139 (listing various ways
to show personal involvement). Nor does the bare fact that
Blackman holds a supervisory role change the analysis, for
a defendant "cannot be held liable for the service of rotten
[food] based on a *respondeat superior* theory." *Reznickcheck
v. Molyneaux*, No. 13-CV-1857, 2014 WL 3746540, at *2
(E.D. Pa. July 29, 2014) (citing *Rode v. Dellarciprete*, 845
F.2d 1195, 1207 (3d Cir. 1988) ); *see also Iqbal*, 556 U.S. at
676 ("[A] plaintiff must plead that each Government-official
defendant, through the official's own individual actions, has
violated the Constitution."); *Banks v. Annucci*, 48 F. Supp.
3d 394, 416 (N.D.N.Y. 2014) ("Where a defendant is a
supervisory official, a mere 'linkage' to the unlawful conduct
through the 'chain of command' (i.e., under the doctrine
of respondeat superior) is insufficient to show his or her
personal involvement in that unlawful conduct." (citations
omitted) ). There are, in sum, no alleged facts showing that
Mosley or Blackman were personally involved in the alleged
unconstitutional deprivation at issue. *See Falls v. Pitt*, No. 16-
CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018)
(holding that personal involvement was not established where
the plaintiff failed to allege the defendants were "present"
for the alleged violation or "participated directly" in or
"somehow permitted" the alleged violation).

**\*5** Finally, as to Cheverko and Diaz — WCDOC
Commissioner and Deputy Commissioner, respectively, (*see*
Am. Compl. 1) — Plaintiff alleges that he "wrote a
[grievance] about all of this" in which he claimed that
Cheverko and Diaz, along with Westchester County, "fail to
watch their workers" or "[train] them" and that they "knew
that this was going on from previous grievances[ ] and
complaints but refused to change the problem," (*id.* at 5).
Plaintiff further clarifies that he "is suing [Cheverko and Diaz]

Quick v. Westchester County, Not Reported in Fed. Supp. (2019)

2019 WL 1083784

on the theory of supervisory liability as both [D]efendants had adequate knowledge that WCJ was being served substandard foods and failed to intervene." (Pl.'s Mem. 2.) As noted, however, in order to establish Cheverko and Diaz's personal involvement on a gross negligence, failure to remedy, or deliberate indifference theory of liability, Plaintiff must show more than a 'mere 'linkage' to the unlawful conduct through the 'chain of command,' " *Banks*, 48 F. Supp. 3d at 416, and Plaintiff's conclusory allegations fail to do that. Plaintiff does not provide facts alleging *what* Cheverko and Diaz knew about the rotten food problem or *when* they knew about it. Nor does Plaintiff provide any facts alleging that Cheverko and Diaz were responsible for a policy or custom on food preparation, training, or supervision; were grossly negligent in supervising employees responsible for food preparation, or were deliberately indifferent to a food preparation problem. Rather, Plaintiff merely alleges, without factual support, that he complained in a grievance about food preparation issues and that "previous grievances" were filed regarding rotten prison food. (Am. Compl. 5.) Yet, the evidence is to the contrary, as the grievance response attached to the initial Complaint states that Plaintiff's grievance "was the first complaint of its kind," (Compl. 13), and Plaintiff does not contest or otherwise respond to this statement. There are, in sum, no facts alleged from which the Court can conclude Defendants Cheverko and Diaz failed to supervise or train other prison officials as to proper food preparation, were deliberately indifferent to a food preparation problem, or were otherwise personally involved in the alleged constitutional deprivations. *See King*, 2018 WL 6510809, at *6 (holding personal involvement not satisfied where the plaintiff "makes no allegations [the defendant] knew of, participated in, or failed to act in the face of other defendants' alleged deliberate indifference to [the] plaintiff's serious medical need"); *Constant v. Annucci*, No. 16-CV-3985, 2018 WL 1684411, at *4 (S.D.N.Y. Apr. 5, 2018) (holding personal involvement not satisfied where the "allegation merely states, in conclusory terms, that [the supervisory defendants] subjected [the plaintiff] to the conditions complained of"); *Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011) (holding personal involvement not satisfied where the plaintiff made conclusory claims that a supervisory official failed to provide proper training and supervision or created a policy).

Accordingly, Plaintiff fails to allege the personal involvement of any individual Defendant in the alleged unconstitutional deprivations at issue.

### 3. *Monell* Liability

Defendants argue that Plaintiff's claims against Westchester County and Aramark must be dismissed for failure to state a *Monell* claim. (Defs.' Mem. 15.)

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (italics omitted) ). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of

Quick v. Westchester County, Not Reported in Fed. Supp. (2019)
2019 WL 1083784

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 75 of 129

those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, the Amended Complaint alleges that Westchester County fails to supervise and train its workers, and that it "knew that this was going on from previous grievances" yet "reused to change the problem." (Am. Compl. 5.) Plaintiff further states that his *Monell* claims are "based on [the] failure to train and supervise kitchen workers," who "never wear gloves" or "hair nets," fail to "properly clean meal trays," and fail to properly "cook meats." (Pl.'s Mem. 3.) These claims, however, are devoid of any detailed factual allegations. Plaintiff does not allege facts suggesting that Westchester County lacks a relevant training or supervisory program or that Westchester County was otherwise deliberately indifferent to food preparation problems. Indeed, as noted, the allegations that Westchester County knew of and was deliberately indifferent to a food preparation problem on the basis of "previous grievances," (Am. Compl. 5), are nonexistent, particularly given that documentation attached to the initial Complaint states, without contradiction by Plaintiff, that Plaintiff's grievance "was the first complaint of its kind," (Compl. 13). Accordingly, because Plaintiff does not allege the fifth element required to state a *Monell* claim, Plaintiff's claims against Westchester County and Aramark must be dismissed, as must any claims against the individual Defendants in their official capacities. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation).[3]

[3]

Because dismissal is required on grounds of Plaintiff's failure to show the personal involvement of any individual Defendant in the alleged constitutional deprivation and failure to state a *Monell* claim, the Court need not resolve at this time Defendants' argument that Plaintiff fails to allege sufficient facts to state an Eighth Amendment violation. (See Defs.' Mem. 12–15.) In correcting the deficiencies identified in this Opinion, Plaintiff will have the opportunity to further develop his Eighth Amendment claim.

### III. Conclusion

**\*6** For the reasons stated above, Defendants' Motion To Dismiss is granted.

Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice. If Plaintiff wishes to file a second amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the second amended complaint will replace, not supplement, the instant Amended Complaint. The second amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1083784

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 7:18-CV-00243**<br>Quick v. Westchester County et al | — | S.D.N.Y. | Jan. 10, 2018 | Docket |

**History**

There are no History results for this citation.

Hobbs v. Department of Transportation NYC, Not Reported in Fed. Supp. (2020)

2020 WL 1140794

2020 WL 1140794
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Richard P. HOBBS, Plaintiff,

v.

DEPARTMENT OF TRANSPORTATION NYC;
U.S. Coast Guard; Allied Universal Security Guards;
NYC Police Department; John Does, Defendants.

20-CV-512 (CM)
|
Signed 03/06/2020

**Attorneys and Law Firms**

Richard P. Hobbs, New York, NY, pro se.

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiff, appearing *pro se*, is currently residing in a
Manhattan homeless shelter. He filed this complaint regarding
events occurring at the Staten Island Ferry Terminal. By order
dated February 3, 2020, the Court granted Plaintiff's request
to proceed without prepayment of fees, that is, *in forma
pauperis*. For the following reasons, the Court dismisses the
action for failure to state a claim, and grants Plaintiff 30 days'
leave to amend his complaint.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or
any portion of the complaint, that is frivolous or malicious,
fails to state a claim on which relief may be granted, or
seeks monetary relief from a defendant who is immune from
such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v.
Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).
The Court must also dismiss a complaint when the Court lacks
subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)

(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

The Supreme Court has held that under Rule 8, a complaint
must include enough facts to state a claim for relief "that
is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). A claim is facially plausible if the
plaintiff pleads enough factual detail to allow the court
to draw the inference that the defendant is liable for the
alleged misconduct. In reviewing the complaint, the court
must accept all well-pleaded factual allegations as true.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does
not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. *Twombly*, 550 U.S. at 555. After separating legal
conclusions from well-pleaded factual allegations, the court
must determine whether those facts make it plausible – not
merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Named as defendants in this one-page complaint, which
is handwritten and hard to read, are the New York City
Department of Transportation (DOT), the United States Coast
Guard, Allied Universal Security Guards; the New York City
Police Department (NYPD); and "John Does to be identified
through deposition." Plaintiff alleges that at the ferry terminal,
"guards and police officers have used color of law to violate
[his] rights," and that they "threat[en him] with prejudice."

**\*2** When I arrive at the terminal they say "I'm homeless"
and try to force me to use ferry sooner than I need to. They
specifically enforce against me while [illegible] they allow
others to steal or do things they need "permits" for but do
not allow me to do the same.

Getting around in a wheelchair is hard. They violate the
ADA as individuals and their policies accomplish the same.
They create color of law but use the laws to mistreat
individuals they do not like for prejudicial reasons.

(ECF 1:20-CV-512, 2.)

2020 WL 1140794

Plaintiff further alleges that three years ago, "they threatened to arrest me because I was campaigning for Trump." *Id.* Plaintiff does not request any specific relief.

## DISCUSSION

### A. Americans With Disabilities Act (ADA)

In his complaint, Plaintiff asserts that he is wheelchair-bound, and that Defendants violated his rights under the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. To state a claim under this statute, a plaintiff must allege that:

> (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability. *Id.*

*McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)). A "defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services.' "

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The statute further states that

> [i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other

> arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

42 U.S.C. § 12182(b)(1)(A)(ii); *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).

Even based on a liberal reading of Plaintiff's allegations, the complaint does not state a claim under the ADA. Although Plaintiff identifies himself as disabled, he does not allege facts suggesting that he was the victim of disability discrimination while he was in the Staten Island Ferry Terminal, and he does not explain what any particular defendant did or failed to do that led to a violation of Plaintiff's rights under the ADA. Plaintiff's claims under the ADA are therefore dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Section 1983

The complaint could also be construed as alleging constitutional violations under 42 U.S.C. § 1983. Under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

**\*3** A § 1983 plaintiff must also allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). A defendant may not be held liable under § 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). An individual defendant can be personally involved in a § 1983 violation if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report

Case 3:25-cv-00695-LEK-MJK Document 6 Filed 07/01/25 Page 80 of 129

Hobbs v. Department of Transportation NYC, Not Reported in Fed. Supp. (2020)

2020 WL 1140794

or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873. [1]

[1]    "Although the Supreme Court's decision in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," the Second Circuit has not yet examined that issue. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

Moreover, where a plaintiff names a defendant in the caption, but the complaint contains no substantive allegations against the defendant, dismissal of the complaint as to that defendant is appropriate. *See Iwachiw v. New York State Dept. of Motor Vehicles*, 299 F. Supp. 2d 117, 121 (E.D.N.Y. 2004), *aff'd*, 396 F.3d 525 (2d Cir. 2005); *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted") (citations omitted).

### 1. Allied Universal Security Guard

"Anyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983." *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012). The Supreme Court has left open the question of when, or whether, a private individual is subject to constitutional tort liability based upon state-sanctioned authority to perform police-type functions. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 163 n.14 (1978). Private action may be deemed governmental when private actors conspire

or are jointly engaged with state actors to deprive a person of constitutional rights, *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); where the state compels the act or controls the private actor, *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); or when the state delegates a public function to a private entity, *West v. Atkins*, 487 U.S. 42, 55-56 (1988); *Manhattan Cmty. Access Corp. v. Halleck*, No. 17-1702, 2019 WL 2493920, at *4 (U.S. June 17, 2019) ("[T]he government must have traditionally and exclusively performed the function."). The purpose of the state action requirement "is to assure that constitutional standards are invoked only when it can be said that the [government] is responsible for the specific conduct of which the plaintiff complains." *Cranley v. Nat'l Life Ins. Co. of Vermont*, 318 F.3d 105, 111 (2d Cir. 2003) (citations omitted).

**\*4** Generally, private security guards are not state actors under § 1983. *See Bishop v. Toys "R" Us–NY LLC*, 414 F. Supp. 2d 385 (S.D.N.Y. 2006); *Guiducci v. Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 37–38 (E.D.N.Y. 2004) (collecting cases). "[T]he plaintiff must allege that the state was involved with the activity that caused the injury giving rise to the action." *P.P. v. City of New York*, No. 13-CV-5049 (CM), 2014 WL 4704800, at *14 (S.D.N.Y. Sept. 19, 2014).

Plaintiff does not allege facts suggesting that the security guard was a state actor or explaining how the security guard violated Plaintiff's constitutional rights.

### 2. The DOT, the NYPD, and New York City

Plaintiff's claims against the New York City Department of Transportation and the New York City Police Department must be dismissed because agencies of the City of New York are not entities that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").

It may be Plaintiff's intention to sue the City of New York. When a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 81 of 129

Hobbs v. Department of Transportation NYC, Not Reported in Fed. Supp. (2020)

2020 WL 1140794

government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiffs' complaint does not contain any facts suggesting that a municipal policy, custom, or practice led to the violation of his federally protected rights.

## C. Federal Tort Claims Act

The doctrine of sovereign immunity bars federal courts from hearing all suits against the federal government, including suits against its agencies, except where sovereign immunity has been waived. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584, 586 (1941)).

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 (FTCA), provides for a waiver of sovereign immunity for injuries arising from the tortious conduct of federal officers or agents acting within the scope of their office or employment.[2] 28 U.S.C. § 1346(b)(1). But before bringing a claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for monetary damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a); *Phillips v. Generations Family Health Ctr.,* 723 F.3d 144, 147 (2d Cir. 2013).

[2]     The FTCA does not waive the sovereign immunity of the United States for constitutional torts. *FDIC v. Meyer,* 510 U.S. 471, 477-78 (1994) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.... [And] the United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims."); *King v. Simpson,* 189 F.3d 284,

287 (2d Cir. 1999) ("Congress has not waived the government's sovereign immunity, for example, under the Federal Tort Claims Act ... from lawsuits based on constitutional claims.").

**\*5**  Pursuant to the FTCA, tort claims against the United States must be "presented in writing to the appropriate Federal agency within two years after such claim accrues" or an action must be commenced within six months of when the agency issued its final denial of administrative remedy. *Roberson v. Greater Hudson Valley Family Health Ctr., Inc.*, ECF 1:17-CV-7325, 17, 2018 WL 2976024, at \*2 (S.D.N.Y. June 12, 2018); *see also* 28 U.S.C. § 2401(b). "Failure to exhaust the agency's administrative remedies within the statute of limitations will render the claim 'forever barred.' " *See id.* (citing *Castellanos v. Elrac Inc.*, No. 07-CV-2191 (DLE) (KAM), 2008 WL 919641, at \*2 (E.D.N.Y. Apr. 3, 2008)). The exhaustion requirement is jurisdictional and cannot be waived. *Celestine v. Mount Vernon Neighborhood Health Ctr.* 403 F.3d 76, 82 (2d Cir. 2005).

Here, there is no indication that Plaintiff has exhausted his administrative remedies under the FTCA.[3] Therefore, to the extent that Plaintiff seeks to assert FTCA claims against the Coast Guard, the Court must dismiss Plaintiff's claims as barred by the doctrine of sovereign immunity. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

[3]     Plaintiff makes no allegations against the Coast Guard, and thus his complaint does not suggest that he can state an FTCA claim. Moreover, Plaintiff does not provide dates for when the underlying events occurred, and thus it is not clear that Plaintiff can file either an administrative claim, or a complaint in this Court. The dismissal of Plaintiff's FTCA claim is without prejudice to any timely and exhausted FTCA claims Plaintiff could file in this Court.

## LITIGATION HISTORY AND WARNING

Plaintiff is an experienced litigator, having previously filed complaints alleging claims under § 1983 and the ADA. *See Hobbs v. Sanitation Dep't of the City of New York,* ECF 1:17-CV-1735, 5 (S.D.N.Y. July 19, 2017) (dismissing complaint for lack of subject matter jurisdiction and for failure to state a claim); *Hobbs v. McCright Associates* ECF 1:17-CV-1284, 6 (S.D.N.Y. May 4, 2017) (dismissing complaint without prejudice for failing to comply with court

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 82 of 129

Hobbs v. Department of Transportation NYC, Not Reported in Fed. Supp. (2020)

2020 WL 1140794

orders), *reconsid. denied* (S.D.N.Y. Nov. 27, 2018); *Hobbs v. Emas Properties, Inc.*, ECF 1:17-CV-0948, 6 (S.D.N.Y. July 9, 2017) (dismissing complaint for failure to state a claim), *recons. denied* (S.D.N.Y. May 3, 2019); *Hobbs v. Bay Park Ctr. for Nursing and Rehabilitation*, ECF 1:15-CV-4679, 12 (S.D.N.Y. Aug. 29, 2016) (dismissing complaint on immunity grounds, and as frivolous and for failure to state a claim); *Hobbs v. N.Y.C. Police Officers*, ECF 1:10-CV-5717, 160 (S.D.N.Y. Apr. 3, 2017) (dismissing case under stipulated settlement); *Hobbs v. Dep't of Law*, ECF 7:09-CV-3114, 23 (S.D.N.Y. Nov. 6, 2009) (dismissing case under stipulated settlement); *Hobbs v. New Rochelle Neighborhood Revitalization Corp.*, No. 02-CV-7386 (S.D.N.Y. Sept. 13, 2002) (dismissing complaint for failure to state a claim).

In light of Plaintiff's litigation history, this Court finds that Plaintiff was or should have been aware of the elements of an ADA claim and a § 1983 claim when he filed this action. *See Sledge v. Kooi*, 564 F.3d 105, 109-110 (2d Cir. 2009) (discussing circumstances where frequent *pro se* litigant may be charged with knowledge of particular legal requirements).

On January 17, 2020, the same day that Plaintiff filed this complaint, he filed three other *pro se* complaints. *See Hobbs v. Lasco*, ECF 1:20-CV-511, 2; *Hobbs v. Evans*, ECF 1:20-CV-514, 2; *Hobbs v. Livingston*, ECF 1:20-CV-515, 2. Plaintiff is warned that if he abuses the privilege of proceeding IFP in this Court, he will be ordered to show cause why he should not be barred, under 28 U.S.C. § 1651, from filing new IFP cases without prior permission.

## CONCLUSION

**\*6** The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed for failure to state a claim and on immunity grounds. 28 U.SC. § 1915(e)(2)(B)(ii), (iii).

In an abundance of caution, Plaintiff is granted thirty days' leave to file an amended complaint that addresses the deficiencies discussed in this order. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 20-CV-512 (CM). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to file an amended complaint, the Court will enter judgment in this case, and the matter will be closed.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1140794

---

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:20-CV-00512**<br>Hobbs v. Department of Transportation NYC et al | — | S.D.N.Y. | Jan. 17, 2020 | Docket |

**History**

There are no History results for this citation.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2475566
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jennifer LAVERTU and John LaVertu, Plaintiffs,

v.

The TOWN OF HUNTINGTON, Defendant(s).

No. CV 13–4378(SJF)(WDW).

|

Signed April 4, 2014.

**Attorneys and Law Firms**

Steven A. Morelli, Paul Bartels, The Law Offices of Steven A. Morelli, P.C., Garden City, NY, for Plaintiffs.

Thelma N. Neira, Town of Huntington, John C. Bennett, Gathman & Bennett, LLP, Huntington, NY, for Defendants.

### *REPORT AND RECOMMENDATIONS*

WILLIAM D. WALL, United States Magistrate Judge.

 **\*1** Before the court on referral from District Judge Feuerstein is a motion to dismiss by defendants. DE[11 & 14]. The motion is opposed by the plaintiffs. DE[12]. For the reasons set forth herein, I recommend that the motion be granted in regard to the First Amendment and Due Process claims, and denied in regard to the Equal Protection claim. I further recommend that the plaintiffs be given leave to replead.

### BACKGROUND

The plaintiffs filed this action in August 2013, alleging civil rights violations by the defendant Town related to the plaintiffs' opposition to the proposed Avalon Bay housing project. Complaint, DE[1]. The plaintiffs report that they released a YouTube video about the proposed project and other issues on January 28, 2011, and allege that the Town retaliated against them in response. On February 5, 2011, the Town released its own YouTube video in rebuttal, and, the plaintiffs allege, "targeted Plaintiffs' home with baseless summonses," in violation of their First Amendment rights. DE[1], ¶ 2. They further allege that the Town "target[ed] Mr.

LaVertu's plumbing license in an attempt to put him out of business, as part of their retaliatory efforts. *Id.*

The plaintiffs assert that the Town's rebuttal video was harassing and improper, because it gave information about the LaVertu's tax records. The "baseless summonses" were issued in June 2011 in regard to a retaining wall allegedly erected without a permit, and the absence of a Certificate of Occupancy for the LaVertu's home for a two story dwelling. The defendant, in support of this motion, has annexed documents that add details about those summonses. The plaintiffs urge the court to ignore such exhibits as improper on a motion to dismiss, but some of the exhibits can be considered, either because they are referenced in the Complaint or the court can take judicial notice of them. Looking to the admissible documents and the Complaint, it appears that the LaVertus originally entered a plea of not guilty as to the alleged violations, asserting that the retaining wall was on their neighbor's property and applying for a Letter In Lieu of a Certificate of Occupancy. A Letter in Lieu application was filed on February 12, 2012, and they were granted a Letter in Lieu on February 21, 2012. The grant of the letter was later disapproved, on October 16, 2012. *See Barfuss Decl.,* DE[11–4], Exhs. A, B & G. The plaintiffs say that they did not learn of the disapproval for several months after it was issued. In the Complaint, the plaintiffs allege that the original Letter in Lieu was disallowed as part of a "witch hunt" against them by the Town. Compl., ¶ 39. Resolution of the Letter in Lieu issue is apparently ongoing in the County District Court.

The name on the accusing instruments was changed from John and Jennifer LaVertu to only Jennifer LaVertu, and, on June 12, 2012, Mrs. LaVertu pleaded guilty to a violation of Huntington Town Code § 87–25 for failure to have a C of O for a two story dwelling. *See* Turner Decl., DE[11–3], Exs. C & D. Pursuant to the Conditions of Discharge of the violation, which was dated June 20, 2012, she was required to "follow through to legalize [the] dwelling at 4 Meredith Dr., Huntington Station to be completed within 4 months of this notice," and to pay a $750 fine. *Id.,* Ex. C. A Declaration of Delinquency was issued by the Suffolk County District Court on or about January 11, 2013, indicating that the LaVertus had not followed through on the Conditions of Discharge and were in default for not making the required changes in the four month period given to them. Turner Decl., Ex. E. It is unclear whether Mrs. LaVertu pleaded guilty to the retaining wall charge, but that charge was "dismissed in satisfaction." The Complaint asserts that the charge was baseless and that the retaining wall is on the Lavertus' neighbors' property. The

2014 WL 2475566

defendant disputes that in the motion papers, but I make no recommendation regarding it.

**\*2** This lawsuit was filed in August 2013, and, in it, the plaintiffs assert claims under the First Amendment, the Due Process Clause and the Equal Protection Clause pursuant to Section 1983. The defendants seek dismissal of all claims in the Complaint.

## DISCUSSION

**Rule 12(b) (6) Standards:**

The defendants move pursuant to Rule 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterprises,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005); *Rosen v. North Shore Towers Apts., Inc.,* 2011 WL 2550733, \*2 (E.D.N.Y. June 27, 2011) (12(b)(1)). To survive a motion to dismiss pursuant to Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But, a pleading that offers only 'labels and conclusions' or a "formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Id.* (quoting *Twombly,* 550 U.S. at 557.) Thus, while detailed factual allegations are not required, the pleading rules do require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly,* 550 U .S. at 555 (internal citations omitted).

The Supreme Court clarified the appropriate pleading standard in *Iqbal,* setting forth a two-pronged approach for courts deciding a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."

*Iqbal,* 556 U.S. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly,* 550 U.S. at 556) (internal citations omitted).

**Defendant's Exhibits in Support of Motion:**

**\*3** The defendant has annexed numerous exhibits to its motion papers, and the plaintiffs challenge them, stating that none of the exhibits have been presented to them "for review or discovery." DE[12] at 4. In deciding a 12(b)(6) motion, the court is confined to the four corners of the complaint, but may consider exhibits attached to the complaint or documents incorporated in it by reference. *See Platt v. Incorporated Vill. of Southampton,* 2009 WL 3076099, \*3 (E.D.N.Y. Sept.21, 2009) (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir.1998) & *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–153 (2d Cir.2002)). The court "may also consider matters of which judicial notice may be taken." *Id.* (citing *Kramer v. Time Warner, Inc.,* 837 F.2d 767, 773 (2d Cir.1991)). I find that some exhibits are incorporated by reference in the Complaint and are properly before the court, and that other exhibits, notably documents from court proceedings regarding the summonses, are suitable for judicial notice.

I turn to the arguments regarding dismissal.

**Monell Claims:**

Although the Complaint does not specify Monell liability, the lawsuit is brought under Section 1983, and the only defendant is the Town, a municipal entity. Thus, the concept of Monell liability is inherent in the claims. The defendant urges that the Complaint does not adequately set forth allegations in regard to Monell liability and that the entire Complaint should be dismissed on that ground.

To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: " '(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right;

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 88 of 129
LaVertu v. Town of Huntington, Not Reported in F.Supp.3d (2014)

2014 WL 2475566

(3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.' " *Jones v. Nassau County Correctional Inst.,* 2014 WL 1277908, *4 (E.D.N.Y. Mar.26, 2014) (quoting *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008); *see also Connick v. Thompson,* ––– U.S. ––––, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell v. Dept. of Social Servs. of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978)). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Id.; see also Connick,* 131 S.Ct. at 1350 (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); *Los Angeles County, Cal. v. Humphries,* ––– U.S. ––––, 131 S.Ct. 447, 452, 178 L.Ed.2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g., solely because it employs a tortfeasor." (quotations and citation omitted)). " 'A municipal policy may be pronounced or tacit and reflected in either action or inaction.' " *Jones,* 2014 WL 1277908 at *5 (quoting *Cash v. County of Erie,* 654 F.3d 324, 333 (2d Cir.2011)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick,* 131 S.Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions—either expressly or tacitly." *Jones,* 691 F.3d at 81.

**\*4** While the Complaint does not specifically identify anyone as a policymaker, it is replete with references to the actions taken by Town Council members and nameless "Town officials." The Town Attorney is also mentioned, as is "high ranking Town Consultant Bob Fonti." The plaintiffs argue that the allegations suffice to suggest a policy of retribution against them by Town officials, and I agree. While the Complaint is not a model of pleading in the Monell context, the plaintiffs allege facts from which it could be plausibly inferred that a custom or policy of the Town caused the alleged violations. *See Jones v. Bay Shore Union Free School Dist. .,* 947 F.Supp.2d 270, 282 (E.D.N.Y. May 28, 2013) (citing *Harris v. Westchester Cnty. Dep't of Corr.,* 2008 WL 953616,

at *11 (S.D.N.Y. Apr.3, 2008)). Accordingly, the defendants' motion to dismiss Plaintiff's Section 1983 claims against the Town based upon Monell liability should be denied.

**Application of Rooker–Feldman Doctrine:**
The defendant recounts the history of the summonses and Mrs. LaVertu's guilty plea in regard to the C of O summons, and argues that, under the Rooker–Feldman doctrine, claims predicated on allegedly baseless summonses should be dismissed.

"Pursuant to what is commonly known as the Rooker–Feldman doctrine, federal district courts lack subject matter jurisdiction over suits that are, in substance, appeals from state court judgments." *Brown v. Wells Fargo Bank, N.A.,* 2014 WL 1248022, *2 (E.D.N.Y. Mar.24, 2014) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414–415, 44 S.Ct. 149, 68 L.Ed. 362,(1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206, (1983); *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998) ("The Rooker–Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment.").

The doctrine is limited to " 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *Brown,* 2014 WL 1248022 at *2 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454, (2005). There are four requirements for the application of Rooker–Feldman: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the plaintiff's claims must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the commencement of the district court proceedings. *Id.* (citing *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Id.* If all four requirements are met, the case must be dismissed.

**\*5** Here, the defendant relies on Jennifer LaVertu's plea of guilty in the County District Court as the relevant lower court proceeding. It would appear from the pleadings and the motion papers that proceedings regarding the Conditional

Discharge and Declaration of Delinquency are ongoing in state court, and I recommend a finding that any reference to the Rooker Feldman doctrine here is premature. While LaVertu's entry of the guilty plea demonstrates that her claim that the summons was baseless is futile, there are still issues about how she can correct the problems that the summons was based on. Further, the plaintiffs do not appear to be complaining of injuries from the District Court ruling, nor are they asking this court to review and reject that ruling. Thus, the complaint should not be dismissed on Rooker–Feldman grounds.

**First Amendment Claims:**

The defendant argues that the plaintiffs fail to state a viable claim for First Amendment violations because plaintiffs' exercise of First Amendment rights was not chilled by any Town action, a requirement of First Amendment retaliation claims. *See* DE[11–11], Mem. in Support at 7. The plaintiffs argue that the chilling element is not necessary and that they have alleged sufficient harm to meet pleading standards. The defendant further argues that, to the limited extent that actual chilling is not necessary, the plaintiffs have not alleged sufficient concrete harm.

To state a claim of retaliation, plaintiffs generally must plead that (1) they have an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by their exercise of that right; and (3) defendants' actions effectively chilled the exercise of their First Amendment right. *Butler v. City of Batavia,* 323 Fed. Appx. 21, 23(2d Cir.2009) (quoting *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001)). The elements of a First Amendment retaliation claim have also been phrased without reference to a chilling requirement, as requiring the plaintiff to prove "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003). While some decisions in the Second Circuit, like *Butler,* have required that plaintiffs prove that the adverse actions chilled the exercise of their First Amendment rights (*see Grossi v. City of New York,* 2009 WL 4456307, *7 n. 4 (E.D.N.Y. Nov.30, 2009) (citing cases)), other courts have found that the chilling element is required only "in cases where a plaintiff states no harm independent of the chilling of his speech." *See Puckett v. City of Glen Cove,* 631 F.Supp.2d 226, 239 (E.D.N.Y. June 30, 2009).

For purposes of this motion, I suggest a finding that the plaintiff, or at least Jennifer LaVertu, engaged in activities protected by the First Amendment and that the Complaint adequately alleges retaliatory motive as to most, but not all, of the Town's acts. I focus for the most part on determining whether the Complaint adequately alleges concrete, specific harm.

**\*6** The Second Circuit has recognized that "in certain situations a showing of some other form of concrete harm may substitute for 'actual chilling,' " *Zherka v. Amicone,* 634 F.3d 642, 643 (2d Cir.2011). The *Zherka* court explained:

"To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights —in other words, there is an injury requirement to state the claim." *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir.2002) (per curiam). Various forms of harm have been accepted as satisfying this injury requirement in the context of a claim that a public official has injured the plaintiff in retaliation for her exercise of her First Amendment rights.

"We have described the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh,* 535 F.3d 71, 76 (2d Cir.2008). For example, public employees must show adverse employment action. *Id.* For their part, inmates must show "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising *645 ... constitutional rights." *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (internal quotation marks and citation omitted).

By contrast, private citizens claiming retaliation for their criticism of public officials have been required to show that they suffered an "actual chill" in their speech as a result. *Id.* (citing *Spear v. Town of W. Hartford,* 954 F.2d 63, 68 (2d Cir.1992)). However, in limited contexts, other forms of harm have been accepted in place of this "actual chilling" requirement. *See, e .g., Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002) (alleging retaliatory revocation of building permit); *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 195 (2d Cir.1994) (alleging retaliatory failure to enforce zoning laws); *see also Gill,* 389 F.3d at 383 (explaining that "the *Gagliardi* plaintiffs' retaliation claim apparently survived a motion to dismiss because ... they adequately pleaded non-speech injuries"). Despite these limited exceptions, as a

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 90 of 129
LaVertu v. Town of Huntington, Not Reported in F.Supp.3d (2014)
2014 WL 2475566

general matter, First Amendment retaliation plaintiffs must typically allege "actual chilling."

634 F.3d at 644–45.

The court in *Zherka* found that a claim of defamation *per se* under state law was not sufficient to satisfy the harm element on a First Amendment retaliation claim. Such harm, they explained, must be concrete or tangible, not assumed, as is the case in defamation per se claims. In private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement." *Brink v. Muscente,* 2013 WL 5366371, *7 (S.D.N.Y. Sept.25, 2013) (citing *Zherka,* 634 F.3d at 643, 645–46; *see also* *Puckett,* 631 F.Supp.2d at 239 (E.D.N.Y.2009) (chilling element is required only "in cases where a plaintiff states no harm independent of the chilling of his speech"); *Tomlins v. Village of Wappinger Falls Zoning Bd. of Appeals,* 812 F.Supp.2d 357, 371 (S.D.N.Y.2011) (deeming allegations of retaliatory denial of building permits and a denial of an unconditional variance sufficient concrete harms to substitute for chilling effects); *Hafez v. City of Schenectady,* 894 F.Supp.2d 207, 222 (N.D.N.Y. Apr.19, 2012) (citing *Gagliardi v. Village of Pawling,* 18 F.3d 188 (2d Cir.1994) (alleging harm in the form of municipal defendants' misapplication of zoning code in retaliation for plaintiffs' exercise of free speech rights))). Where a plaintiff has sufficiently alleged a concrete harm, and in the absence of a subjective chilling requirement, Second Circuit courts have only required a showing (1) that the First Amendment protected the plaintiff's conduct, and (2) that "defendants' conduct was motivated by or substantially caused by [the plaintiff's] exercise of speech." *Hafez,* 894 F.Supp.2d at 222 (citing *Gagliardi,* 18 F.3d at 194 (citation omitted)); *see also* *Tomlins,* 812 F.Supp.2d at 371 n. 11. Contrary to the plaintiff's argument, some concrete harm must be shown, even if chilling is not.

**\*7** Here, the plaintiffs have suggested that their free speech rights are implicated, alleging that in issuing summonses to the plaintiffs, the Town had "the clear intention of deterring Free Speech activities," but they do not allege any actual chilling. Compl. ¶ 2. Instead, the complaint can be read to allege harm flowing primarily from the YouTube video, unwarranted summonses and interference with Mr. LaVertu's plumbing license.

The allegations of harm allegedly done by the rebuttal video are too vague and conclusory to constitute the concrete harm needed to make out a First Amendment Retaliation claim. The Complaint alleges that the video was a "personal attack"

on Mrs. LaVertu and that it released information about her tax records. I have not viewed the videos, although they are referenced in the Complaint and provided as exhibits to the motion, but limit my consideration, on this motion to dismiss, to the allegations set forth in the Complaint itself. The posting of the video does not per se suggest retaliatory motive. Mrs. LaVertu had posted her own YouTube video and a rebuttal in kind was not so surprising. The fact that the Town posted its rebuttal in the same forum used by Mrs. LaVertu does not in and of itself give rise to an inference of retaliatory motive or concrete harm. The content of the video as described in the Complaint, as distinct from the fact of the posting itself, also fails to satisfy the standard of harm required. If it did disclose the LaVertus' property taxes (and I assume that it did), it only aired information readily accessible as a matter of public record. No details are given in the Complaint as to the nature of the personal attack beyond the tax information, and the vague allegations about discussions on various social media and other websites add nothing to the allegation of harm. While Mrs. LaVertu may have felt "personally attacked, "[h]urt feelings or a bruised ego are not by themselves the stuff of constitutional tort." *Zherka,* 634 F.3d at 645–46 (citing *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir.2004) 0. Although the Second Circuit has not decided if "allegations of emotional and psychological harm would establish compensable injury in a First Amendment retaliation claim," I recommend that the allegations in regard to the video do not establish such a compensable injury. *See Zherka,* 634 F.3d at 646–47.

The vague allegations about the plumbing license similarly do not rise to a level sufficient to make out a claim of constitutional tort. There are no allegations of any concrete harm to Mr. LaVertu caused by any Town behavior in this regard, harm such as loss of business or harm to reputation [1]. Thus, those claims do not provide the actual harm necessary for a First Amendment retaliation claim.

[1]   I do not take a position on whether loss of business or injury to reputation would constitute such concrete harm.

Nor do the allegations about the summonses suggest sufficiently concrete or tangible harm so as to satisfy the pleading standards for a First Amendment retaliation claim. The retaining wall summons, even viewed as baseless, is too de minimis in terms of harm for First Amendment retaliation purposes. [2] If, on the other hand, the court accepted the plaintiffs' claim that the Certificate of Occupancy summons

was baseless, it might rise to such a level because it carried the potential for greater consequences. The record before the court, however, does not allow an inference of baselessness to be drawn. As noted, the court can take judicial notice of the County court documents regarding that summons, and those documents reflect the fact that Mrs. LaVertu entered a plea of guilty to the summons. This court will not infer baselessness under that circumstance. The issue of whether a Letter in Lieu should have been issued—an issue that presumably will be decided by the County court—is still open, but there is nothing to support an inference that the summons itself was baseless. The plaintiffs argue that even if the summonses were justified, their retaliation claim is viable if the Town's motivation for enforcing the Code was retaliatory. *See* DE[12] at 19. They do not, however, cite any law to support that conclusion, which is at odds with the caselaw setting forth the elements of a First Amendment claim as requiring more than retaliatory motive.

2    The circumstances of the retaining wall summons are discussed in the context of the Equal Protection claim *infra.*

**\*8** In their memorandum in opposition to the motion, the plaintiffs argue that Town Attorney Jacob Turner's refusal to conference with them about the ongoing Letter in Lieu dispute is "the essence of First Amendment Retaliation," but that allegation is not in the Complaint, and I do not address it. *See* DE [12] at 18.

Finally, the Complaint alleges that Jennifer LaVertu has experienced "severe reoccurring headaches, sleeplessness and numbness in her fingers and along the left side of her body," and that doctors diagnosed stress as a cause for her physical complaints. Compl., ¶ 63. That stress was allegedly cause by the Town's retaliatory acts. As noted earlier, "[h]urt feelings or a bruised ego are not by themselves the stuff of constitutional tort." *Zherka,* 634 F.3d at 645–46. These allegations, however, describe physical harm. Neither party addresses the issue of whether these allegations of physical distress can substitute for the chilling of rights as concrete harm in a First Amendment retaliation context, and I have located no cases in this Circuit that have so found. I recommend that the type of harm that satisfies the concrete harm requirement not be extended to this sort of injury, which is quite different from the forms of concrete harm distinct from the chilling of speech that have been found in other cases[3]. See, e.g., *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002) (retaliatory

revocation of plaintiff's building permit); *Gagliardi v. Village of Pawling,* 18 F.3d 188, 195 (2d Cir.1994) (retaliatory failure to enforce zoning laws); *see also Tomlins,* 812 F.Supp.2d at 239 (allegations of retaliatory denial of building permitss and denial of unconditional variance sufficient concrete harms to substitute for chilling effects); *Puckett,* 631 F.Supp.2d 22(First Amendment retaliation claim adequately pled where plaintiff alleged harm to value of her property as result of defendants' retaliatory conduct).

3    I note that if District Judge Feuerstein disagrees, and finds that these allegations do suffice, that the harm is to Mrs. LaVertu only. Mr. LaVertu has alleged no such harm to himself. Indeed, Mr. LaVertu's role in the events outlined in the Complaint, except for the allegations about his plumbing business, and the impact of those events on him, is not clear.

The Second Circuit has observed that "the arena of political discourse can at times be rough and tough. Public officials must expect that their decisions will be subjected to withering scrutiny from the populace. A public official's response to that criticism is subject to limits, but the injury inflicted by that response must be real. Without that limitation, the Constitution would change from the guarantor of free speech to the silencer of public debate." *Zherka,* 634 F.3d at 647. The Complaint here does not sufficiently set forth a real injury in First Amendment terms, and I recommend that the First Amendment Retaliation claim be dismissed without prejudice and that the plaintiffs be permitted to replead.

**Substantive Due Process Claim:**
The plaintiffs allege violations of their substantive due process rights. " 'In the zoning context, a government decision regulating a landowner's use of his property offends substantive due process if the government action is arbitrary or irrational. Government regulation of a landowner's use of his property is deemed arbitrary or irrational, and thus violates his right to substantive due process, only when government acts with no legitimate reason for its decision.' " *Ahmed v. Town of Oyster Bay,* 2014 WL 1092363, \*10 (E.D.N.Y. Mar.18, 2014) (quoting *Southview Assoc., Ltd. v. Bongartz,* 980 F.2d 84, 102 (2d Cir.1992) (citations and quotation marks omitted)); *see also Merry Charters, LLC v. Town of Stonington,* 342 F.Supp.2d 69, 78 (D.Conn.2004) (explaining that "denial by a local zoning authority violates substantive due process standards only if the denial is so outrageously arbitrary as to constitute a gross abuse of governmental

authority"). "As for substantive due process, '[i]n the context of a zoning dispute, to state a claim ... for deprivation of 'property' without due process of law a person must establish that he had a valid 'property interest' in some benefit that was protectible under the fourteenth amendment at the time he was deprived of the benefit.' " *Zito v. Town of Babylon,* 534 Fed. Appx. 25, 27 (2d Cir.2013) (citing *Brady v. Town of Colchester,* 863 F.2d 205, 211–12 (2d Cir.1988)). The defendant argues that the property or liberty interest claimed by the LaVertus is nowhere stated in the Complaint. That is true, but I assume for purposes of this motion that here, the property interest at issue is the LaVertu's use and enjoyment of their home, and I assume that they are alleging that the summonses against the property have interfered with that use and enjoyment. However, even if such a property interest is inferred, this claim is not ripe under the test set out in *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126(1985), and should be dismissed without prejudice to renewal.

**\*9** Following *Williamson,* the Second Circuit applies " 'a two-pronged test for assessing the ripeness of takings-type claims.' " *Zito,* 534 Fed. Appx. at 28 (quoting *Southview Associates, Ltd. v. Bongartz,* 980 F.2d 84, 95–96 (2d Cir.1992) (internal citations omitted)). "The first prong requires the government entity charged with enforcing the regulations at issue to have rendered a final decision. The second prong requires the plaintiff to have sought compensation if the state provides a reasonable, certain and adequate provision for obtaining compensation." *Id.* (internal citations and quotation marks omitted); *see also Dougherty,* 282 F.3d at 88. The Second Circuit applies Williamson's "final decision" requirement to both substantive and procedural due process claims in the land-use context. *Id.* (citing *Dougherty,* 282 F.3d at 88–89 (procedural due process), *Southview,* 980 F.2d at 96–97 (substantive due process)). Here, the dispute about the C of O/Letter in Lieu is ongoing in the County court, with no final determination yet reached by the County authorities. It is also unclear whether the LaVertus have initiated any appeals or started an Article 78 proceeding. Thus, this court cannot find that the claim is ripe and I recommend that it be dismissed without prejudice.

**Equal Protection Claim:**

The plaintiffs' equal protection claim apparently arises from their contention that they were issued a summons for the retaining wall and their neighbors were not. As noted earlier, they allege that the retaining wall is on the boundary line between their neighbor's property and their own, and that

the neighbors helped build the wall, but their neighbors were never issued a summons for lack of a permit, while they were [4]. Complaint, ¶¶ 32–34. This claim can be analyzed as selective prosecution or class of one discrimination. Selective prosecution plaintiffs "have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Mental Disability Law Clinic, Touro Law Center v. Hogan,* 519 Fed. Appx. 714, 718 (2d Cir.2013) (citing *Cobb v. Pozzi,* 363 F.3d 89, 110 (2d Cir.2004) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001))).

4     The defendants vigorously deny this, and have submitted photographs and other evidence that the wall is on the LaVertus' property. I do not address the merits of the plaintiffs' allegation. If the case proceeds, they will have to prove their allegations. If they replead the Complaint, they may wish to amend allegations that time has proven invalid, or they may wish to adhere to their original allegations.

Under class-of-one discrimination doctrine, " 'when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a rational basis for the difference in treatment." *Id.* (quoting *Engquist v. Oregon Dep't of Agric.,* 553 U.S. 591, 602, 975, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) (internal quotation marks omitted)). A plaintiff proceeding on a "class of one" equal protection theory must plead " 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves.' " *Sacher v. Village of Old Brookville,* 2013 WL 4780046, *7 (E.D.N.Y. Sept.4, 2013) (quoting *Ruston v. Town Bd. for Vill. of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010)). In particular, a class-of-one plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* (citing *Adam J. v. Village of Greenwood Lake,* 2013 WL 3357174 *7 (S.D.N.Y.2013); *Viteritti v. Incorporated Vill. of Bayville,* 918 F.Supp.2d 126, 135 (E.D.N.Y.2013); *MacPherson v. Town*

*of Southampton,* 738 F.Supp.2d 353, 371 (E.D.N.Y.2010)). "To state a class of one equal protection claim in a zoning context, a plaintiff must make more than a general statement of treatment different from those similarly situated. Even the mention of particular properties alleged generally to be similar is insufficient to state a claim. Instead, the properties cited must be so similar that 'no rational person could see them as different ...'" *Sacher,* 2013 WL 4780046 at*7(quoting *Ruston,* 610 F.3d at 60). Thus, a plaintiff alleging unfair treatment in a zoning/building context, must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged. *Id.* (citing *Amid v. Village of Old Brookville,* 2013 WL 527772 *6 (E.D.N.Y.2013).

 **\*10** Under either theory, the plaintiffs have sufficiently alleged a claim based on the retaining wall summons. The allegations about their neighbors are sufficient to withstand the motion to dismiss on an equal protection claim based on the wall, because the neighbors are valid comparators. To the extent, if any, that they intended a broader claim arising from their being issued with summonses while other Town residents with similar violations were not, such a claim must be dismissed because no comparators other than their neighbors are identified. Further, their argument that the Town Attorney's refusal to conference with them is a violation of their Equal Protection rights (see DE [12] at 23) will not be considered, because that allegation does not appear in the Complaint.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; Fed.R.Civ.P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Caidor v. Onondaga County,* 517 F.3d 601, 604 (2d Cir.2008); *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003).

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2475566

**History (3)**

**Direct History (2)**

1. LaVertu v. Town of Huntington
   2014 WL 2475566 , E.D.N.Y. , Apr. 04, 2014

*Report and Recommendation Adopted in Part by*

2. Lavertu v. Town of Huntington
   2014 WL 2506217 , E.D.N.Y. , June 02, 2014

**Related References (1)**

3. LaVertu v. Town of Huntington
   2014 WL 6682262 , E.D.N.Y. , Nov. 24, 2014

**Filings**

There are no Filings for this citation.

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 96 of 129
**Lavertu v. Town of Huntington, Not Reported in F.Supp.3d (2014)**

2014 WL 2506217

2014 WL 2506217
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

John LAVERTU and Jennifer Lavertu, Plaintiffs,
v.
The TOWN OF HUNTINGTON, Defendant.

No. 13–CV–4378 (SJF).
|
Signed June 2, 2014.

**Attorneys and Law Firms**

Steven A. Morelli, The Law Offices of Steven A. Morelli, P.C., Garden City, NY, for Plaintiffs.

Paul Bartels, Garden City, NY, Thelma N. Neira, Town of Huntington, John C. Bennett, Gathman & Bennett, LLP, Huntington, NY, for Defendant.

**OPINION AND ORDER**

FEUERSTEIN, District Judge.

**\*1** Before the Court is the Report and Recommendation ("Report") of Magistrate Judge William D. Wall, dated April 4, 2013, recommending that defendant Town of Huntington's motion to dismiss be granted as to plaintiffs' First Amendment and Due Process claims and denied as to plaintiffs' Equal Protection Claim. The Report also recommends that plaintiffs be given leave to replead. Both parties timely filed objections. For the following reasons, the Report is adopted to the extent set forth below and defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED** in part and **DENIED** in part.

**I. Case History**

On August 2, 2013, plaintiffs Jennifer LaVertu and John LaVertu ("plaintiffs") filed a complaint against defendant Town of Huntington ("Town") alleging that the Town violated their constitutional rights. Specifically, plaintiffs allege that after they released a video on YouTube opposing the Town's proposed housing project, the Town retaliated against them by releasing its own rebuttal YouTube video, targeting plaintiffs' home with baseless summonses and interfering with John LaVertu's plumbing license. The complaint alleges

that the Town's retaliatory acts infringed upon plaintiffs' First Amendment, Equal Protection and Substantive Due Process rights.

Defendant filed a motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, which was referred to Magistrate Judge Wall to report and recommend. The Report recommends that defendant's motion to dismiss the case, pursuant to *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), be denied on the ground the complaint contains plausible allegations that a municipal custom or policy caused the violations. The Report also recommends that the case not be dismissed under the *Rooker–Feldman* doctrine .[1] As to plaintiff's First Amendment retaliation claim, Magistrate Judge Wall recommends it be dismissed without prejudice and that plaintiffs be permitted to replead to allege a concrete harm. As to plaintiffs' substantive due process claim, the Report recommends it be dismissed without prejudice on the ground it is unripe and that it be raised anew after final judgment by the Huntington Town Court, Third District. The Report also recommends that plaintiffs' equal protection claim go forward as a class-of-one violation based on the retaining wall summons.

[1]    Pursuant to the *Rooker–Feldman* doctrine, a federal court lacks subject matter jurisdiction over suits that are, in substance, appeals from state court judgments. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414–415, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

**II. Discussion**

**A. Standard of Review**

Title 28 U.S.C. § 636(b)(1)(C) provides that a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also* Fed.R.Civ.P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). After reviewing a report, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "[I]n providing for a 'de novo determination' ... Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial

2014 WL 2506217

discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

**B. Analysis**

*Monell Liability*

**\*2** Defendant objects to the Report's finding that plaintiffs stated a viable *Monell* claim on the ground plaintiffs failed to plead deprivation of a constitutional right or damages.

In a motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Kimbrough v. Town of Dewitt Police Dep't,* No. 03 Civ. 08, 2010 WL 3724121, at \*3 (N.D.N.Y. Mar. 8, 2010) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The complaint alleges that plaintiffs released their YouTube video opposing the housing project on January 28, 2011. Approximately eight days later, on February 5, 2011, the Town released its own video entitled "Huntington Speaks" using an alternative YouTube account. At the end, Huntington Town Council members take credit for the video, which publicized information about plaintiffs' real estate taxes. Compl. ¶¶ 17–21. Councilwoman Susan Bernard allegedly told plaintiffs that the rebuttal video was specifically made in response to plaintiffs' video criticizing the Town. *Id.* at ¶ 27.

On June 6, 2011, the Town voted on and approved a change in zoning to accommodate the housing project. *Id.* at ¶ 29. The next day, June 7, 2011, plaintiffs received a summons for a stone retaining wall on the boundary line between plaintiffs and their neighbor, yet the neighbor was not ticketed. *Id.* at ¶ 32. After plaintiffs proved that the neighbors owned the wall, the summons against plaintiff was dismissed, however, the neighbor was not ticketed. *Id.* at ¶ 34.

On June 7, 2011, plaintiffs were also ticketed because they had no certificate of occupancy for their home. *Id.* at ¶ 35. On February 14, 2012, they requested a town inspection to obtain approval for a "letter-in-lieu" of a certificate of occupancy (the "Letter"). On February 21, 2012, the inspector issued a Final Inspection for Construction prior to 1934, which found that the structure was safe and the Letter was approved. *Id.* at ¶¶ 36, 37. According to the complaint, nearly eight (8) months later and without reason or justification, Jennifer LaVertu was advised that the inspector's Letter had been "discredited." [2] *Id.* at ¶ 38. On April 4, 2012, John LaVertu saw the inspector who approved the Letter who told plaintiff that he was being

written up for not doing his job when he inspected plaintiffs' home and that the subsequent denial of the Letter was part of a "witch-hunt" against plaintiffs. *Id.* at ¶ 39. After speaking with the inspector, John LaVertu called the Town official, who advised plaintiff it was not safe to speak on his Town issued cell phone and that he would call plaintiff back from his private cell phone. *Id .* at ¶ 40. The Town official called plaintiff and advised him that the Town attorney, John Leo, had approached him and demanded the inspector be written up. The Town official vehemently disagreed with Mr. Leo, but Mr. Leo insisted, stating that it was an order from "higher ups," specifically Patricia DelCol, Deputy Supervisor for the Town of Huntington. *Id.* at ¶¶ 41, 42. The Town official stated, "in my 24 years I have never seen [the Town] go after anyone so strongly," in reference to plaintiffs. *Id.* at ¶ 43. After John LaVertu explained that plaintiffs thought the Town had retaliated against them after they objected to the housing project, the official stated, "yep, that is what they do, now I understand, but I have never seen them go after anyone like this." *Id.* at ¶ 44.

[2]     Plaintiffs allege that Jennifer LaVertu found out nearly "eight (8) months" later that the letter-in-lieu had been discredited (Compl.¶ 38), but according to the next allegation, John LaVertu saw the inspector on April 4, 2012 or approximately two (2) months after the inspection. *Id.* at ¶ 39.

**\*3** Accepting the foregoing as true, plaintiffs' allegations raise an inference that the Town had a policy or custom of targeting private citizens who criticized the Town's actions. Accordingly, that portion of the Report which recommends denying the Town's motion to dismiss this case based on *Monell* is adopted and defendant's objections are overruled.

*First Amendment Retaliation Claim*

Plaintiffs object to the Report's recommendation that their First Amendment claim be dismissed without prejudice and they be permitted to replead to allege a concrete harm. They argue that the summonses issued for the retaining wall and certificate of occupancy constitute sufficient harm to sustain their retaliation claim.

To establish a retaliation claim under § 1983 in cases involving criticism of public officials by private citizens, a plaintiff must show that "(1) his conduct was protected by the First Amendment and (2) such conduct prompted or substantially caused defendant's action ." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83,

91 (2d Cir.2002) (internal citations omitted). In addition, the Second Circuit generally "impose[s] an actual chill requirement for First Amendment retaliation claims." *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004). *See Zherka v. Amicone,* 634 F.3d 642, 645 (2d Cir.2011) ("[P]rivate citizens claiming retaliation for their criticism of public officials have been required to show that they suffered an 'actual chill' in their speech as a result.") (citing *Gill,* 389 F.3d at 381); *Spear v. Town of West Hempstead,* 954 F.2d 63, 68 (2d Cir.1992) (First Amendment retaliation claim properly dismissed where plaintiff continued to speak out after government's allegedly adverse actions).

"However, in limited contexts, other forms of harm have been accepted in place of this 'actual chilling' requirement." *Zherka,* 634 F.3d at 645. Thus, the Second Circuit has described "the elements of a First Amendment retaliation claim in several ways, depending on the factual context." *Williams v. Town of Greenburgh,* 535 F.3d 71, 76 (2d Cir.2008). *See Dougherty,* 282 F.3d at 91 (finding adequate harm where complaint alleged that plaintiff's building permit was revoked days after he opposed municipality's motion to dismiss); *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 195 (2d Cir.1994) (upholding retaliation claim where defendant municipality refused to enforce zoning laws on behalf of plaintiffs); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals,* 812 F.Supp.2d 357, 371 n. 17 (S.D.N.Y.2011) (retaliation claim stated where plaintiff alleged that zoning board denied building permit and an unconditional variance in retaliation for prior litigation against municipality). "Despite these limited exceptions, as a general matter, First Amendment retaliation plaintiffs must typically allege 'actual chilling.'" *Zherka,* 634 F.3d at 645.

Plaintiffs contend that the fact that the Town cited them for the retaining wall, which actually belongs to their neighbors, is evidence of a concrete harm. Plaintiffs had to respond to the summons, execute a land survey and coordinate with the Town Inspector to prove that the retaining wall was not theirs. [3] These allegations do not amount to First Amendment harm.

[3]    In their objections, plaintiffs argue that had plaintiffs failed to respond to the summons, a warrant would have issued for their arrests and they would have been imprisoned. DE 21 p. 8. They argue that Magistrate Judge Wall overlooked these scenarios by finding that the retaining wall summons was de minimus. *Id.* I disagree. First

Amendment harm cannot be based on speculation or supposition.

**\*4** As to the summons for lack of a Certificate of Occupancy, plaintiffs advise the Court that the District Court of the County of Suffolk, Third District ("the Town court") dismissed the pending action against Jennifer LaVertu on her motion to vacate the Conditional Discharge and/or dismiss a Declaration of Delinquency. DE 21–2 p. 23. Because defendant objects to Magistrate Judge Wall's recommendation that the Court *sua sponte* grant plaintiffs leave to replead their First Amendment claim to allege a concrete harm, the recommendation is adopted to the extent that plaintiffs' First Amendment retaliation claim is dismissed without prejudice and if they choose, plaintiffs may move for leave to amend their complaint to give defendant an opportunity to oppose the motion.

### Substantive Due Process Claim

Plaintiffs object to the Report's recommendation that their substantive due process claim be dismissed without prejudice because the certificate of occupancy/Letter issues had not been decided by the town court. As discussed above, while this motion was pending, the Town court rendered a decision granting plaintiff Jennifer LaVertu's Town court motion and holding that she satisfied her promises in the Conditional Discharge. DE 21–2 p. 25. Plaintiffs' objections contain allegations about the decision that are not part of the complaint. Accordingly, the Report is adopted to the extent plaintiffs' Due Process claim is dismissed without prejudice.

### Equal Protection Claim

Defendant objects to the Report's recommendation that plaintiffs' Equal Protection claim be allowed to proceed as a class-of-one action based on the summons for the retaining wall.

Defendant complains that the Report did not address *People v. Goodman,* 31 N.Y.2d 262, 338 N.Y.S.2d 97, 290 N.E.2d 139, 143 (N.Y.1972), which held that a claim of discriminatory enforcement "should not be considered as an affirmative defense to [a] criminal charge ... but, rather, should be addressed to the court before trial as a motion to dismiss the prosecution upon constitutional grounds." The Town argues that plaintiffs failed to make such a motion.

" 'By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a

2014 WL 2506217

federal constitutional right.' " *Pilchman v. Dep't of Defense,* 154 F.Supp.2d 415, 421 (E.D.N.Y.2001) (quoting *F.D.I.C. v. Meyer,* 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). Because plaintiffs bring their equal protection claim pursuant to the Fourteenth Amendment and 42 U .S.C. § 1983, federal law applies to their claim and therefore, they were not required to bring a motion to dismiss in state court prior to filing their federal complaint.

As the remainder of defendant's objections lack merit, the Report's recommendation that defendant's motion to dismiss be denied as to plaintiff's equal protection claim is adopted and, accordingly, defendant's motion is denied as to this claim.

### III. Conclusion

For the foregoing reasons, the Report is adopted to the extent indicated and accordingly, defendant's motion to dismiss this case on *Monell* grounds is denied. The motion is also denied with respect to plaintiffs' Equal Protection claim. The motion is granted for failure to state a claim as to plaintiffs' First Amendment Retaliation and Due Process claims and those claims are dismissed without prejudice.

**\*5  SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 2506217

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

**History (3)**

**Direct History (2)**

1. LaVertu v. Town of Huntington
2014 WL 2475566 , E.D.N.Y. , Apr. 04, 2014

*Report and Recommendation Adopted in Part by*

2. Lavertu v. Town of Huntington
2014 WL 2506217 , E.D.N.Y. , June 02, 2014

**Related References (1)**

3. LaVertu v. Town of Huntington
2014 WL 6682262 , E.D.N.Y. , Nov. 24, 2014

**Filings**

There are no Filings for this citation.

2023 WL 4935993

2023 WL 4935993
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Brandon T. MCNAIR, Plaintiff,
v.
UTICA POLICE DEPARTMENT, et al., Defendants.

6:23-CV-699 (DNH/ATB)
|
Signed June 26, 2023

**Attorneys and Law Firms**

BRANDON T. McNAIR, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court for review a pro se
complaint filed by plaintiff Brandon T. McNair, in which
he has sued various defendants based on several civil rights
claims pursuant to 42 U.S.C. § 1983. (Dkt. No. 1) ("Compl.").
Plaintiff has also moved to proceed in forma pauperis ("IFP").
(Dkt. No. 2).

**I. IFP Application**
Plaintiff declares in his IFP application that he is unable to pay
the filing fee. (Dkt. No. 2). After reviewing his application
and supporting documents, this court finds that plaintiff is
financially eligible for IFP status.

However, in addition to determining whether plaintiff meets
the financial criteria to proceed IFP, the court must also
consider the sufficiency of the allegations set forth in the
complaint in light of 28 U.S.C. § 1915, which provides that
the court shall dismiss the case at any time if the court
determines that the action is (i) frivolous or malicious; (ii)
fails to state a claim on which relief may be granted; or (iii)
seeks monetary relief against a defendant who is immune
from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court
must consider whether the complaint lacks an arguable basis
in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325
(1989), *abrogated on other grounds by Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915.
Dismissal of frivolous actions is appropriate to prevent abuses
of court process as well as to discourage the waste of judicial
resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*,
505 F.2d 802, 804 (8th Cir. 1974). Although the court has
a duty to show liberality toward pro se litigants and must
use extreme caution in ordering sua sponte dismissal of a
pro se complaint before the adverse party has been served
and has had an opportunity to respond, the court still has a
responsibility to determine that a claim is not frivolous before
permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh
St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding
that a district court may dismiss a frivolous complaint sua
sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint
must contain sufficient factual matter, accepted as true, to
state a claim that is "plausible on its face." *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Id.* (citing *Bell Atl.
Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading
contain a "short and plain statement of the claim showing
that the pleader is entitled to relief." Although Rule 8 does
not require detailed factual allegations, it does "demand[ ]
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation." *Houston v. Collerman*, No. 9:16-CV-1009
(BKS/ATB), 2016 WL 6267968, at \*2 (N.D.N.Y. Oct. 26,
2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that
contains allegations that " 'are so vague as to fail to give
the defendants adequate notice of the claims against them'
is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F.
App'x 102, 104 (2d Cir. 2009)). The court will now turn
to a consideration of plaintiff's complaint under the above
standards.

**II. Complaint**
**\*2** Plaintiff alleges that on July 27, 2021 at approximately
10:00 a.m., he was on the "east side" of Utica, New York
when the "cops hopped out [and] detained [him and] tried to
search [him.]" (Compl. at 4). He further alleges that, based off
a general description, the police searched plaintiff because he
was "black in a certain area where a man with a gun had been
alleged to be there." (*Id.*). Plaintiff was arrested after "running
for [his] life in an attempt to keep [the police] from violating
[his] rights." (*Id.*). Plaintiff was "thrown in jail" and charged

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 103 of 129

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)
2023 WL 4935993

with "possession of an instrument that was found almost an hour after, under some car in the parking lot of a car shop." (*Id.* at 7).

Plaintiff then states that he appeared at a bail hearing in Oneida County Court, with the defendants District Attorney ("DA") McNamara and Judge Michael L. Dwyer. (Compl. at 7). Plaintiff alleges that when Judge Dwyer learned of plaintiff's intention to post bail, he "then raised it in a clear attempt to make it unreachable post bail reform[.]" (*Id.*). Plaintiff states that he was "denied audience with the Supreme Court and [his] habeas corpus was illegally unheard," having been put "right back in front of [Judge] Dwyer for him to answer[.]" (*Id.*). Plaintiff claims that this is "not how the process works," and that Judge Dwyer "didn't have the authority to answer [his] habeas corpus." (*Id.*).

Plaintiff further alleges that Judge Dwyer and DA McNamara proceeded to "violate [his] rights in every court proceeding leading up to trial." (Compl. at 7). Plaintiff cites to a decision from the Fourth Department relative to his criminal case for the underlying facts surrounding his claims. According to *Matter of McNair v. McNamara*, plaintiff's jury trial commenced on November 1, 2021, at which time a jury was selected and sworn, and three witnesses testified. 206 A.D. 3d 1689, 1690 (4th Dep't 2022). November 2nd was a holiday, during which the trial was recessed. (*Id.*). On November 3rd, Judge Dwyer's secretary notified plaintiff's counsel that the Judge had a cold, wanted to make sure it was not COVID-19, he would not be in that day, and the jury would be sent home. (*Id.*). Plaintiff's counsel was notified several days later that the matter would be scheduled for a retrial on November 15th. (*Id.*). Essentially, the Judge believed a mistrial was necessary because it was "physically impossible" for him to come to court and proceed with the trial, while he waited three to five days for the result of his COVID-19 test. (*Id.*). Over plaintiff's counsel's objections, the mistrial was declared as of November 3rd. (*Id.*). The Fourth Department ultimately agreed with plaintiff in concluding that there was no "manifest necessity" for the mistrial, and that the county court abused its discretion in granting the mistrial sua sponte. (*Id.* at 1690-92). Accordingly, the government was prohibited from retrying plaintiff on the underlying indictment based on double jeopardy grounds. Liberally construed, this court interprets plaintiff's claims of constitutional violations in the instant complaint to relate to the underlying trial proceedings as described in *Matter of McNair*. Plaintiff also alleges that the police were "selective [and] omitted certain facts to

allow the proceedings to continue," and that DA McNamara "also did not reveal certain facts in order to secure an indictment." (Compl. at 7).

Plaintiff alleges damages including mental and physical injuries sustained during his incarceration. (Compl. at 5). He seeks monetary damages in the amount of twenty million dollars, as well as "punitive damages of relieving the officials of their official capacities." (*Id.*).

## DISCUSSION

### III. Sovereign and Judicial Immunities

**\*3** The complaint must be dismissed as against named defendants Oneida County Courts and Officials and Judge Dwyer, because they are immune from suit. The Second Circuit has ruled that "the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Because the Oneida County Court is a part of the New York State Unified Court System, it is entitled to sovereign immunity. Similarly, judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity. *See Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (dismissing claim against a Delaware County judge on sovereign immunity grounds). As both the Oneida County Court and Judge Dwyer are arms of the State, they are entitled to Eleventh Amendment immunity, and it is recommended that the complaint against them be dismissed with prejudice.

The complaint against Judge Dwyer in his personal capacity is subject to dismissal on judicial immunity grounds. *See, e.g., Washington v. Ciccone*, No. 3:21-CV-0564 (MAD/ML), 2021 WL 2935950, at \*4 (N.D.N.Y. July 13, 2021) (Judicial immunity "shields judges from suit to the extent they are sued in their individual capacities[.]"), *report and recommendation adopted*, 2021 WL 4859663 (N.D.N.Y. Oct. 19, 2021). It is well settled that judges have absolutely immunity for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988); *Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature' ") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)); *Kim v. Saccento*, No. 21-2865, 2022 WL 9583756, at \*2 (2d Cir. Oct. 17, 2022), *cert. denied*, No.

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

22-732, 2023 WL 2959393 (U.S. Apr. 17, 2023) ("the actions that [plaintiff] complains of – adverse decisions in a criminal proceeding – are plainly judicial in nature"); *Root v. Liston,* 444 F.3d 127, 132 (2d Cir. 2006) (judges who set bail enjoy absolute immunity) (collecting cases). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Coon v. Merola,* No. 1:19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y. Apr. 8, 2019) (citing *Imbler v. Pachtman,* 424 U.S. 409, 419 n.12 (1976)), *report and recommendation adopted,* 2019 WL 1978595 (N.D.N.Y. May 3, 2019).

"The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " *Id.* (quoting *Mireles,* 502 U.S. at 11-12). Here, plaintiff has failed to plausibly allege that Judge Dwyer was acting outside of his judicial capacity or in the absence of jurisdiction. To the extent that plaintiff alleges that his habeas corpus petition was not properly before Judge Dwyer, Article 70 of the New York Civil Practice Law and Rules specifically authorizes a petition for the writ to be made to a county judge being or residing within the county in which the petitioner is detained. N.Y. C.P.L.R. § 7002(b)(4). In the absence of any other allegation suggesting that the general rule regarding judicial immunity can be overcome, the court recommends dismissing with prejudice the complaint as against Judge Dwyer in his individual capacity. *See Edwardsen v. Aloi,* No. 5:17-CV-00202 (LEK/TWD), 2017 WL 1283496, at *3 (N.D.N.Y. Mar. 3, 2017) (recommending dismissal with prejudice on judicial immunity grounds), *report and recommendation adopted,* 2017 WL 1283763 (N.D.N.Y. Apr. 5, 2017).

Plaintiff has also included unidentified "officials" of the Oneida County Court as defendants in the caption of his complaint. There is, however, no specific allegation anywhere in the complaint referencing any other court official who was involved in the alleged violations of plaintiff's constitutional rights. In any event, even if plaintiff had identified another court "official" as a defendant, judicial immunity has been extended to " 'certain others who perform functions closely associated with the judicial process.' " *Marshall v. New York State Pub. High Sch. Athletic Ass'n, Inc.,* 374 F. Supp. 3d 276, 288 (W.D.N.Y. 2019) (quoting inter alia *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985)). Quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou,* 438 U.S. 478,

513 (1978); *see Cleavinger,* 474 U.S. at 201 ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell,* 585 F.3d 72, 81 (2d Cir. 2009) ("Judicial and quasi-judicial immunity are both absolute immunities." (citations omitted)). Much like judicial immunity, "[a] defendant entitled to quasi-judicial immunity loses that privilege only if [he or] she acts in the clear absence of all jurisdiction." *Finn v. Anderson,* 592 F. App'x 16, 19 (2d Cir. 2014) (internal quotation marks and citation omitted). Thus, it is likely that the unidentified court official defendants would also be protected from suit based on the doctrine of quasi-judicial immunity.

## IV. Prosecutorial Immunity

**\*4** The complaint is also subject to dismissal as against DA McNamara. The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota,* 27 F.4th 855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman,* 424 U.S. 409, 427 (1976)). In *Anilao,* the Second Circuit explained:

> Our cases make clear that prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir. 1987)(quotation marks omitted). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994)). For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial. *See id.*; *Imbler,* 424 U.S. at 431, 96 S. Ct. 984 (concluding that a prosecutor is absolutely immune from a § 1983 suit for damages based on his "initiating a prosecution and ... presenting the State's case"). For that reason, we have held that absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory,* 25 F.3d at 83 (cleaned up).

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 105 of 129

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

*Id.* at 864. *See also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) (holding that absolute prosecutorial immunity protects a prosecutor for advocacy in connection with a bail application).

"By contrast, prosecutors receive only qualified immunity when performing 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.' " *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "Investigation, arrest, and detention have historically and by precedent been regarded as the work of police, not prosecutors, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate." *Id.* (interior quotation marks and citations omitted); *see Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) (" '[A]ctions taken as an investigator enjoy only qualified immunity.' ") (quoting *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000)). "Under a functional approach, actions are not shielded by absolute immunity merely because they are performed by a prosecutor. 'A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.' " *Giraldo*, 694 F.3d at 166 (quoting *Buckley*, 509 U.S. at 273).

Liberally construed, in this case plaintiff alleges that DA McNamara violated his rights by "hold[ing] plaintiff in an attempt to retry [him] illegally for 7 months" after the mistrial (Compl. at 7), and for failing to "reveal certain facts in order to secure an indictment" (*id.*). Otherwise, plaintiff generally alleges that DA McNamara violated his rights "in every court proceeding leading up to trial[,] "in the trial [and] after the first trial[.]" (*Id.*). With respect to the indictment, the courts have long held that a prosecutor's determination to bring charges against an individual by presentment of a case to the grand jury is an act by an advocate intimately related to the judicial phase of the criminal process to which absolute prosecutorial immunity applies. *See Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (The act of "knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from [the grand jury] ... lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process.") (citing *Imbler*, 424 U.S. at 431 & n. 34); *Pinaud v. County of Suffolk*, 52 F.3d at 1149 (holding district attorneys absolutely immune from claim for malicious

prosecution and presentation of false evidence to the grand jury); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir. 1984) ("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity...."); *J. & W. Trading & Leasing Inc. v. New York*, No. 5:15-CV-327 (GLS/DEP), 2015 WL 4135961, at *3 (N.D.N.Y. 2015) (granting absolute immunity where prosecutor allegedly presented false testimony before grand jury). Accordingly, plaintiff may not pursue his § 1983 action against DA McNamara based on his alleged failure to disclose evidence to the grand jury.

**\*5** The court concludes that DA McNamara is also immune from any suit by plaintiff based on his efforts to continue the prosecution of plaintiff's criminal case, although there is certainly less case law involving this scenario. Bearing in mind the standard of determining whether the specific conduct at issue is 'intimately associated with the judicial phase of the criminal process,' the court cannot conclude that DA McNamara's efforts to retry plaintiff's case after Judge Dwyer granted a mistrial runs afoul of the prosecutor's protected function of initiating a prosecution and presenting the State's case. *See, e.g.*, *Davis v. State of N.Y.*, No. 90 Civ. 6170, 1991 WL 156351, at *6 (S.D.N.Y. Aug. 6, 1991) (whatever the defendant prosecutors may have done to delay plaintiff's criminal retrial, "they acted in their capacity as advocates in the state's prosecution ... [and] are entitled to absolute immunity ...."), *aff'd sub nom. Davis v. New York*, 106 F. App'x 82 (2d Cir. 2004); *Russo v. Vermont*, No. 1:10-CV-296, 2011 WL 4537956, at *6, 8 (D. Vt. July 29, 2011) (notwithstanding the plaintiff's claim that the prosecutors in his case were "obsessed and won't let go[,]" their decision "to proceed with a retrial ... is protected by prosecutorial immunity"), *report and recommendation adopted*, 2011 WL 4566303 (D. Vt. Sept. 29, 2011).

There is no evidence that DA McNamara's conduct in this regard fell outside the scope of his function as an advocate. *See Anilao*, 27 F.4th at 865 (" '[A]bsolute immunity must be denied' only where there is both the absence of all authority (because, for example, no statute authorizes the prosecutor's conduct) and the absence of any doubt that the challenged action falls well outside the scope of prosecutorial authority.... Prosecutors thus have absolute immunity in a § 1983 action ... so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description.' ") (citations omitted). In particular, there is no suggestion that DA McNamara's conduct in this respect could be interpreted as an "investigative or administrative task[ ]", for which the

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 106 of 129
McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)
2023 WL 4935993

prosecutor would only be eligible for qualified immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (quoting *Imbler*, 424 U.S. at 431 n.33); *see also McDonough v. Smith*, No. 1:15-CV-1505 (MAD/DJS), 2022 WL 3279348, at *17 (N.D.N.Y. Aug. 11, 2022) ("Investigative tasks beyond the scope of absolute immunity are those 'normally performed by a detective or police officer.' ") (quoting *Buckley*, 509 U.S. at 273); *Moye v. City of New York*, 11 Civ. 316, 2012 WL 2569085, at *6 (S.D.N.Y. July 3, 2012) ("[T]he Second Circuit has distinguished between 'preparing for the presentation of an existing case,' on the one hand, and attempting to 'furnish evidence on which a prosecution could be based,' on the other hand, with only the former entitling a prosecutor to absolute immunity.") (quoting *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998)). Accordingly, the complaint should be dismissed as against DA McNamara based on his absolute prosecutorial immunity.

## V. Defendant Utica Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, No. 5:18-CV-1471(GTS/DEP), 2019 WL 981850, at *1 (N.D.N.Y. Jan. 7, 2019), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008)); *see also Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357 (GLS/ATB), 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014). Accordingly, the complaint as against defendant Utica Police Department must be dismissed for failure to state a claim upon which relief may be granted.

Even if the court were to construe plaintiff's claims against the Utica Police Department as against the City of Utica, dismissal would still be warranted. A municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipal liability laid out in *Monell*, in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some

action that caused his injuries beyond merely employing the misbehaving officer.").

**\*6** A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of respondeat superior." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

"[A] prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

In this case, plaintiff has (1) not identified any of the Utica police officers who allegedly violated his constitutional rights as defendants in this action, and (2) has offered no evidence that any such officer was acting pursuant to a policy or custom of the City when they detained and/or arrested plaintiff, or throughout the course of plaintiff's criminal proceeding. Accordingly, the City cannot be held liable for plaintiff's allegations of false arrest/imprisonment, malicious prosecution or unspecified due process violations, as stated in the complaint.

## VI. Eighth Amendment Cruel and Unusual Punishment

Plaintiff has alleged an Eighth Amendment claim of cruel and unusual punishment. (Compl. at 7-8). Plaintiff does not specify against whom he alleges this violation of his

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 107 of 129

McNair v. Utica Police Department, Not Reported in Fed. Supp. (2023)

2023 WL 4935993

constitutional rights. (*Id.*). In any event, these protections of the Eighth Amendment "only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing." *Spicer v. Burden*, 564 F. Supp. 3d 22, 31 (D. Conn. 2021) (citing *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Accordingly, any claim purportedly brought by plaintiff under the Eighth Amendment for cruel and unusual punishment must be dismissed.

## VII. Opportunity to Amend

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, the court is recommending dismissal with prejudice as to defendant Utica Police Department, because the department may not be sued under § 1983. The court is further recommending dismissal with prejudice as to defendants Judge Dwyer, the Oneida County Courts and Officials, and DA McNamara, based on their absolute immunity from suit.

*\*7* Notwithstanding my recommendation that each of the named defendants be dismissed with prejudice, the court cannot say at this early stage of the litigation that plaintiff would be unable to amend his complaint to state a viable claim. Thus, the court recommends providing plaintiff the opportunity to amend his complaint for the limited purpose of asserting those claims alleging constitutional violations surrounding his detention, arrest, and subsequent criminal prosecution as set forth in his complaint, against the appropriate defendants. Plaintiff is reminded that if he intends to name the City of Utica as a defendant, he must plead, and ultimately prove, that a deprivation of his constitutional rights was caused by a custom, policy, or usage of the municipality. Likewise, plaintiff must specifically identify any individual law enforcement officer he is alleging violated his constitutional rights. If plaintiff chooses to amend his complaint, he must also specifically set forth the personal involvement of each named defendant relative to the conduct alleged to have violated his constitutional rights.

If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [1] and it is

[1]    Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED**, that this action be **DISMISSED WITH PREJUDICE** as against named defendants **UTICA POLICE DEPARTMENT, JUDGE MICHAEL L. DWYER, ONEIDA COUNTY COURTS a/k/a/ ONEIDA COUNTY COURTS AND OFFICIALS, and DISTRICT ATTORNEY SCOTT McNAMARA**, and it is

**RECOMMENDED**, that plaintiff's complaint otherwise be **DISMISSED WITHOUT PREJUDICE,** and that, if the District Court adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERSEDE THE ORIGINAL**, and that plaintiff must include all remaining facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff does not elect to amend his complaint within the imposed deadline, the case be dismissed in its entirety, with prejudice, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any orders relating to service on the defendants, and it is

2023 WL 4935993

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL** PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4935993

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.** **Docket 6:23-CV-00699**<br>McNair v. Utica Police Department et al | — | N.D.N.Y. | June 12, 2023 | Docket |

**History (2)**

**Direct History (2)**

1.  McNair v. Utica Police Department
    2023 WL 4935993 , N.D.N.Y. , June 26, 2023

*Report and Recommendation Adopted by*

2.  McNair v. Utica Police Department
    2023 WL 4931609 , N.D.N.Y. , Aug. 01, 2023

WESTLAW        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 112 of 129

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

2019 WL 1981416
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald James COON, Plaintiff,

v.

Frank MEROLA, et al., Defendants.

1:19-CV-394 (DNH/ATB)
|
Signed 04/08/2019

**Attorneys and Law Firms**

Donald James Coon, Troy, NY, pro se.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a civil rights complaint
filed by pro se plaintiff Donald James Coon, together with a
motion to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2).

**I. In Forma Pauperis ("IFP") Application**
A review of plaintiff's IFP application shows that he declares
he is unable to pay the filing fee. (Dkt. No. 2). The court finds
for purposes of this recommendation, that plaintiff meets the
financial criteria for IFP status.

In addition to determining whether plaintiff meets the
financial criteria to proceed IFP, the court must also consider
the sufficiency of the allegations set forth in the complaint
in light of 28 U.S.C. § 1915, which provides that the court
shall dismiss the case at any time if the court determines that
the action is (i) frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief. 28
U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
consider whether the complaint lacks an arguable basis in
law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989).
Dismissal of frivolous actions is appropriate to prevent abuses
of court process as well as to discourage the waste of judicial
resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505
F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to

show liberality toward pro se litigants, and must use extreme
caution in ordering sua sponte dismissal of a pro se complaint
before the adverse party has been served and has had an
opportunity to respond, the court still has a responsibility
to determine that a claim is not frivolous before permitting
a plaintiff to proceed. Fitzgerald v. First East Seventh St.
Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that
a district court may dismiss a frivolous complaint sua sponte
even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint
must contain sufficient factual matter, accepted as true, to
state a claim that is "plausible on its face." Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare
recitals of the elements of a cause of action, supported by
mere conclusory statements, do not suffice." Id. (citing Bell
Atl. Corp., 550 U.S. at 555). The court will now turn to
a consideration of the plaintiff's complaint under the above
standards.

**II. Complaint**
Although plaintiff's complaint is very conclusory, a liberal
reading of the allegations contained therein show that plaintiff
is attempting to allege that the Rensselaer County Clerk and
his John/Jane Doe Deputy Clerks have violated plaintiff's
constitutional rights in connection with a state court law suit
that plaintiff has attempted to bring. (Complaint ("Compl.")
generally) (Dkt. No. 1). In order to understand plaintiff's
allegations in this action, the court must discuss another
action filed by this plaintiff in 2016. In 2016, plaintiff
filed a federal action in this court in which he named
a variety of defendants, including Police Chief George
Bell, the Villages of Cambridge and Greenwich, various
district attorneys, Claverack Insurance Company, Glens Falls
Hospital, Washington County Child Protective Services, and
a police officer. Coon v. Bell, No. 1:16-CV-291 (TJM/DJS).

**\*2** After initial review of plaintiff's complaint in Coon v.
Bell, Magistrate Judge Daniel Stewart found that plaintiff
failed to state claims against the defendants and recommended
that he be allowed to file an amended complaint in
an effort to cure the deficiencies in the original. (Dkt.
No. 8 in 16-CV-291). United States District Court Judge
Thomas J. McAvoy adopted Magistrate Judge Stewart's
recommendation on May 23, 2016. (Dkt. No. 11 in 16-
CV-291). Plaintiff complied with the court's direction and
filed an amended complaint on May 23, 2016. (Dkt. No. 12
in 16-CV-291).

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

Magistrate Judge Stewart conducted an initial review of the amended complaint and found that plaintiff failed to cure most of the deficiencies that were in the original. (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart recommended dismissing most of the claims and most of the defendants from the action, while allowing a Fourth Amendment illegal search claim and Fourth Amendment excessive force claim to proceed against defendant Bell.[1] (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart's recommendation was adopted by Judge McAvoy on November 2, 2016. (Dkt. No. 16 in 16-CV-291).

[1]     Defendant Bell has since passed away, and his estate's representative has been substituted as a party. (Dkt. Nos. 52, 71). Another defendant was joined to 16-CV-291, and there have been various other proceedings in that case, but those details are not relevant to this action.

In Magistrate Judge Stewart's report and recommendation, he found that plaintiff's defamation claims against defendant Bell and his attempted contract claims against defendant Bell and Claverack Insurance Company were, at best, state law claims.[2] (Dkt. No. 13 in 16-CV-291 at 4). Plaintiff then states that he "filed said claims" in the Rensselaer County Supreme Court. (Compl. at 1). Plaintiff states that in 2017, Judge Andrew G. Ceresia granted plaintiff poor person status, but that when he went to the Rensselaer County Clerk's office, defendant Merola told plaintiff that Judge Ceresia's order was "no good and they wouldn't honor it." (Compl. at 2). Plaintiff states that he brought Judge Ceresia's order to the Clerk's office four more times, and "finally" on March 11, 2019, a clerk that plaintiff had never seen before stamped the Judge's order and kept a copy. (Id.)

[2]     Although plaintiff states in this action that Magistrate Judge Stewart told plaintiff that the contract and defamation claims "needed to be refiled in Supreme Court," that is not exactly what Magistrate Judge Stewart said. His exact words were that "[l]iberally construed, plaintiff **might** be attempting to make state law defamation and intentional interference with a contract claims. **Again, however, Plaintiff's vague and conclusory allegations fail to plausibly state such claims.**" (Dkt. No. 13 in 16-CV-291 at 4) (emphasis added). The court merely notes this for the record. Magistrate Judge Stewart's dismissal

and his language are not relevant to the findings herein.

Plaintiff alleges that he has been denied his "rightful benefits and access to the court." Plaintiff states that he even had "to choose between the suit or my housing," and that he was homeless from January 12, 2018 until April 24, 2018. (Id.) Plaintiff states that the Rensselaer County Supreme Court wrote plaintiff "2 times the County Clerk's staff made me pay for RJI motion I had already paid for. They told me to give letter [sic] to the Clerk and I would get my monies back." (Id.)

Plaintiff states that he is seeking "just compensation" for the Rensselaer County Clerks' actions who refused to recognize his "poor person status" from 2017 until 2019. Plaintiff states that he still has not "received anything" from the "grant[ed] status" because the Clerks refused to grant "my said status." (Id.) Plaintiff seeks substantial monetary relief. (Id.)

### III. Judicial Immunity

#### A. Legal Standards
**\*3** With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Absolute immunity extends to court clerks who perform tasks " 'which are judicial in nature and an integral part of the judicial process.' " *Proctor v. Quinn*, No. 19-CV-833, 2019 WL 692935, at \*2 (E.D.N.Y. Feb. 19, 2019) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)). The court's " ' inherent power to control its docket is part of its function of resolving disputes between parties' and is thus 'a function for which judges and their supporting staff

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

are afforded absolute immunity.' " *Id.* (quoting *Rodriguez*, 116 F.3d at 66); and citing *Pikulin v. Gonzalez*, No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office activities of filing and docketing legal documents"). However, a court clerk may not be entitled to absolute immunity where the clerk's refusal to accept the papers of a litigant seeking to commence an action results in the deprivation of the individual's constitutional rights. *Glass v. New York Supreme Court Appellate Division*, No. 1:17-CV-226, 2017 WL 9487181, at *3 (N.D.N.Y. Apr. 26, 2017) (citations omitted).

In determining whether the clerk's conduct in a particular case is "judicial" in nature, the court takes a "functional approach" and allows the defendant absolute immunity when the clerk is performing a "discretionary act, or performing a duty that inherently relates to resolving a dispute." *Vance v. State of New York Dep't of Corrections*, No. 9:18-CV-748, 2018 WL 6047828, at *10 (N.D.N.Y. Nov. 19, 2018) (quoting *Dzwonczyk v. Suddaby*, No. 10-CV-0300, 2010 WL 1704722, at *6 (N.D.N.Y. Apr. 28, 2010) (citing *Rodriguez*, 116 F.3d at 67) (internal quotation marks omitted)).

**B. Application**

Plaintiff's statements in this case are conclusory and essentially, he is suing the "clerks" because they would not file his poor person status order between 2017 and 2019. At best, he alleges a delay in granting him poor person status because it appears that a clerk finally took and filed plaintiff's order, and at the end of his complaint, plaintiff alleges that he "still" has not "received a thing or any help from *the granyted [sic] status.*" (Compl. at 2) (emphasis added). It is unclear what plaintiff believes he should have "received" or to what "help" he thinks he is entitled from the clerks beyond filing his order.

It is also unclear how plaintiff alleges that he was denied "access to courts" because he states that he filed his state law claims in the Rensselaer County Supreme Court. (Compl. at 1). However, he claims he was denied his "rightful benefits," and that somehow the clerk's actions in delaying the filing of his poor person order were related to his homelessness between January 12, 2018 and April 24, 2018. Plaintiff claims that he had to choose between "the suit" or his housing, but he does not explain why this is true or why this would be a denial of his constitutional rights. Plaintiff also states that the clerks made plaintiff pay for his RJI "motion," but that he was told that if he wrote a letter, he would get his money back.

**\*4** As it is written, plaintiff's complaint is too conclusory to state a claim against any of the clerks in this action, whether named or unnamed, [3] and the court will recommend dismissal.

[3]    Finally, the court must note that the United States Marshal would not be able to effect service of process on a "John or Jane Doe" defendant. In order for plaintiff to pursue his claims against John Doe defendants, he would ultimately be required to ascertain their identity. *LaPoint v. Vasiloff*, No. 5:15-CV-185, 2015 WL 1524437, at *4 (N.D.N.Y. Apr. 2, 2015).

**IV. <u>Opportunity to Amend</u>**

**A. Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

**B. Application**

In this case, the court will recommend dismissal without prejudice, even though the court has serious doubts that plaintiff will be able to amend his complaint to state a claim. However, because there are situations in which a clerk would not be entitled to absolute immunity, and plaintiff in this case has failed to include enough facts for the court to make an accurate determination, the court will recommend dismissal without prejudice to plaintiff submitting an amended complaint.

If the court adopts this recommendation, and plaintiff is afforded the opportunity to amend, he should be afforded forty-five (45) days from the date of the order adopting this court's recommendation. Plaintiff should also be advised that if he files an amended complaint, it must be a complete pleading which must supercede the original and may not incorporate any facts from the original by reference.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED for purposes of filing**, and it is further

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 115 of 129

**Coon v. Merola, Not Reported in Fed. Supp. (2019)**

2019 WL 1981416

**RECOMMENDED**, that the complaint be **DISMISSED** based on quasi-judicial immunity and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii) **WITHOUT PREJUDICE** to plaintiff filing an amended complaint, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, plaintiff be directed to file his amended complaint or ask for an extension of time to do so within **FORTY-FIVE (45) DAYS** from the date of the District Court's order adopting the recommendation, and it is

**RECOMMENDED**, that if plaintiff files an amended complaint within the appropriate time, the court return the proposed amended complaint to me for initial review, and it is

**RECOMMENDED**, that if the court adopts this recommendation, and plaintiff fails to file an amended complaint or ask for an extension of time to do so at the expiration of the forty-five (45) days, the complaint be dismissed with prejudice and the case closed, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1981416

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1. Docket 1:19-CV-00394**<br>Coon v. Merola et al | — | N.D.N.Y. | Apr. 03, 2019 | Docket |

**History (2)**

**Direct History (2)**

1. Coon v. Merola
   2019 WL 1981416 , N.D.N.Y. , Apr. 08, 2019

*Report and Recommendation Adopted by*

2. Coon v. Merola
   2019 WL 1978595 , N.D.N.Y. , May 03, 2019

2019 WL 1978595
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald James COON, Plaintiff,

v.

Frank MEROLA, Rensselaer County Clerk; and Jane/
John Does, Clerks at County Clerk's Office, Defendants.

1:19-CV-394 (DNH/ATB)
|
Signed 05/03/2019

**Attorneys and Law Firms**

DONALD JAMES COON, Plaintiff pro se, 289 5th Avenue,
Troy, NY 12180.

### DECISION and ORDER

DAVID N. HURD, United States District Judge

**\*1** Pro se plaintiff Donald James Coon brought this civil
rights action pursuant to 42 U.S.C. § 1983. On April 8, 2019,
the Honorable Andrew T. Baxter, United States Magistrate
Judge, advised by Report-Recommendation that plaintiff's
complaint be dismissed without prejudice but that he be
given an opportunity to amend. No objections to the Report-
Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of the Magistrate Judge, the Report-
Recommendation is accepted in whole. See 28 U.S.C. §
636(b)(1).

Therefore, it is

ORDERED that

1. Plaintiff's complaint is DISMISSED without prejudice;

2. Plaintiff is provided forty-five (45) days from the date of
this Decision and Order to file an amended complaint that
cures the defects identified in the Report-Recommendation;

3. If plaintiff files a timely amended complaint, it be
forwarded to the Magistrate Judge for review; and

4. If plaintiff fails to file an amended complaint within forty-
five (45) days of the date of this Decision and Order, the
complaint be dismissed with prejudice and without further
order.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1978595

---

     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**     © 2025 Thomson Reuters. No claim to original U.S. Government Works.     1

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:19-CV-00394**<br>Coon v. Merola et al | — | N.D.N.Y. | Apr. 03, 2019 | Docket |

**History (2)**

**Direct History (2)**

1. Coon v. Merola
2019 WL 1981416 , N.D.N.Y. , Apr. 08, 2019

*Report and Recommendation Adopted by*

2. Coon v. Merola
2019 WL 1978595 , N.D.N.Y. , May 03, 2019

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 122 of 129

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams; Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 123 of 129

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambler v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 124 of 129

1997 WL 599355

no clear error on the face of the record in order to accept the recommendation").

**\*3**  Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

[1]    I note, however, that the report-recommendation would survive even *de novo* review.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4**  Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

Case 3:25-cv-00695-LEK-MJK   Document 6   Filed 07/01/25   Page 126 of 129

Brown v. Peters, Not Reported in F.Supp. (1997)
1997 WL 599355

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:25-cv-00695-LEK-MJK    Document 6    Filed 07/01/25    Page 127 of 129

1997 WL 599355

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (2)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 97-2725**<br>BROWN v. PETERS, ET AL | — | C.A.2 | Oct. 16, 1997 | Docket |
| **2. Docket 6:95CV01641**<br>BROWN v. PETERS, ET AL | — | N.D.N.Y. | Nov. 17, 1995 | Docket |

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (2)**

**Direct History (2)**

  1. Brown v. Peters
    1997 WL 599355 , N.D.N.Y. , Sep. 22, 1997

    *Affirmed by*

  2. Brown v. Peters
    175 F.3d 1007 , 2nd Cir.(N.Y.) , Feb. 26, 1999